20112

A. L. BELL, Respondent, v. HARRINGTON MANUFACTURING COMPANY, Appellant.

(219 S. E. (2d) 906)

*Messers. Burroughs, Green, Sasser & Hudson,* of Conway, for *Appellant,* cite:

*Messrs. J. Reuben Long, Eldridge R. Inman and Kenneth C. Inman,* of Conway, *for Respondent.*

Nov. 19, 1975.

GREGORY, Justice:

A. L. Bell, the respondent herein, purchased a new bulk curing tobacco barn, manufactured by Harrington Manufacturing Company, appellant herein, from one of its authorized dealers in Loris, South Carolina. Respondent initially brought this action against appellant based on the breach of express oral warranties and for breach of implied warranty of merchantability. The case was tried before the Honorable James A Spruill, Jr. at the April, 1974 term of the Court of Common Pleas for Horry County. The jury awarded respondent Six Thousand Two Hundred Twenty-Five (6,-225.00) Dollars and appellant then moved for judgment *non obstante veredicto* or, in the alternative, a new trial *nisi*. This case is here on appeal from denial of that motion.

■ The only question to be resolved is whether there was sufficient testimony on the record to justify the verdict and the amount of damages.

In the course of trying to sell respondent one of their barns, appellant's authorized dealer and agent made the following representations and warranties to respondent, all of which respondent alleges induced him to purchase the barn: (1) that the barn was of first quality materials and workmanship, (2) that it carried a 7½ horse power blower system, which would furnish more air and dry and cure tobacco more efficiently and with less cost, (3) that it operated electronically and had an automatic firing system which would automatically advance itself through a range of temperatures after being manually set for each range, (4) that the barn was the most well constructed, most durable barn on the market, (5) that competent men at all times would be on the spot within two hours to correct anything that might go wrong, (6) that there would be plenty of parts available if needed, and (7) that they (Harrington Manufacturing Company) had been constructing, selling, and distributing the

barns long enough so that all the bugs and defects were ironed out.

Section 10.2-313 of the South Carolina Code of Laws, 1962, provides in relevent parts as follows:

(1) (a) Any affirmation of fact or promise . . . made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty. (1966 [54] 2716.)

We think that although some of the salesman's promises and descriptions constituted mere "sales puffing" or commendations of the barn, that there was sufficient testimony from which the jury could reasonably find the existence of express oral warranties by promise and description that the barn was of first-rate quality and that necessary parts and prompt service would be available if needed.

In addition to the express warranties, the finding of which was a question of fact for the jury, the barn was also covered by an implied warranty of merchantability under Section 10.2-314 of the South Carolina Code, 1962, which provides in relevant parts that "unless excluded or modified (§ 10.2-316), a warranty that the goods shall be merchantable is implied on a contract for their sale if the seller is a merchant with respect to goods of that kind."

Appellant, Harrington Manufacturers, is a merchant with respect to bulk barns within the meaning of that term as used in the Uniform Commercial Code Sections. Subsection (2) of Section 10.2-314, *supra,* provides that for goods to be merchantable they must be at least such as "pass without objection in the trade under the contract description [and they must be] fit for the ordinary purposes for which such goods are used." There was no evidence presented of any oral disclaimers or modifications of this implied warranty of mercantability. Although appellant proffered its standard printed warranty into evidence the court refused to admit it absent proof of delivery to or knowledge thereof by respondent.

Respondent offered unrebutted testimony that upon delivery of the bulk barn, the angle iron that held the steel floor was loose and sliding, the corner boards were loose, causing cracks, the doors would not close, the roof was buckled, the tobacco racks did not fit, and the sides of the barn buckled inward when the barn was filled with tobacco. Appellant offered testimony that it sent its servicemen who remedied these defects to the satisfaction of the respondent, with the exception of the doors and the caving in of the sides. We conclude that there was ample testimony from which the jury could conclude that appellant breached both oral express warranties as to superior craftsmanship and first-rate quality and the implied warranty of merchantability.

Upon loading the new barn for its first curing, respondent became seriously ill necessitating hospital confinement for approximately a week. He left the care of the curing in the hands of a personal friend, the distributor of the appellant. Upon respondent's return home a week later, all of his tobacco had rotted, forcing respondent to pitch the approximately 4,000 pounds in the woods. It was appellant's position that respondent's absence while in the hospital without anyone to oversee the curing caused the loss of the tobacco rather than any defect in the barn.

Following the loss of the first curing, one of appellant's servicemen advised respondent to change the outside regulator as it was not the proper size. After considerable difficulty, respondent located and installed the specified regulator to the outside gas tank. The respondent continued to have problems. The barn would not fire. Respondent immediately called the president of Harrington Manufacturing who had servicemen at respondent's barn at about one o'clock that afternoon. They replaced a thermocouple and left. Mid-way through the curing another thermocouple burned out and the uncontroverted testimony shows that during the course of the second curing, four more thermocouples had to be replaced, each time leaving the tobacco without necessary heat. Respondent testified that every subsequent barn of tobacco cured in the new barn was damaged due to the constant blow outs of thermocouples. Appellant's own engineer testified on cross-examination that the blow outs were caused by a faulty firing system. The firing system is a component part of appellant's bulk barn. We think that the condition of the barn and the recurrent problems with the firing system provided ample evidence from which the jury could find a breach of warranty by appellant. It is well established that reversal of a jury's verdict can only result when the only reasonable inference from the evidence is contrary to the factual finding implicit in the verdict. *Parnell v. Carolina Coca-Cola Bottling Co.,* 231 S. C. 426, 98 S. E. (2d) 834 (1957).

Respondent introduced evidence of Seven Thousand Four Hundred Fifty-five and 72/100 ($7,455.72) Dollars spent on pouring the foundation for the barn, wiring it, building a shelter and racking system. He introduced evidence that although he cured the same type of tobacco in all of his barns, the tobacco cured in the bulk barn brought consistently less per pound when sold. We will not state the evidence as to damages in greater detail but we have carefully reviewed all of the evidence and conclude there is no merit in the contention of the appellant that the amount

of damages was not supported by the evidence. Where a verdict is deemed excessive by the trial judge, in the sense that it indicates merely undue liberality on the part of the jury, he alone has the power of setting it aside absolutely or reducing it by granting a new trial *nisi*. Ordinarily the decision of the trial judge is not appealable and will not be disturbed by this Court unless it clearly appears that the exercise of his discretion was controlled by manifest error of law. *Gray v. Davis*, 247 S. C. 536, 148 S. E. (2d) 682 (1966). We concur with the opinion of the trial judge in his order that the damages awarded were well within what would have been permissible under respondent's proof.

There was ample testimony to sustain both the jury's finding of appellant's breach of warranty and the amount of their award. Accordingly, the exception is overruled and the judgment of the lower court is affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.