EDWARDS–WARREN TIRE COMPANY,
Plaintiff-Appellee,

v.

J. J. BLAZER CONSTRUCTION COM-
PANY, INC., Defendant-Third Party
Plaintiff-Appellee,

v.

MICHELIN TIRE CORPORATION,
Third-Party Defendant-Appellant.

No. 76–1511.

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1977.

Decided Nov. 11, 1977.

Ralph F. Mitchell, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, John M. Kenney, Anderson, Russell, Kill & Olick, New York City, for third-party defendant-appellant.

Robert E. Dever, Bannon, Howland, McCurdy, Dever & Mearan, Portsmouth, Ohio, for plaintiff-appellee.

Before CELEBREZZE and PECK, Circuit Judges, and FREEMAN,* Senior District Judge.

CELEBREZZE, Circuit Judge.

This diversity action originated as a suit on an account by Edwards-Warren Tire Company (Edwards-Warren), a Michelin tire dealer, against J. J. Blazer Construction Company, Inc. (Blazer), a contractor, for the unpaid purchase price of a quantity of

* The Honorable Ralph M. Freeman, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

earth-mover tires manufactured by Michelin Tire Corporation (Michelin). Blazer purchased the tires from Edwards-Warren to equip a fleet of twelve off-the-road trucks working on a highway construction project in Shadyside, Ohio. Blazer refused to pay for the tires after they structurally failed in use under conditions which suggested latent defects in their design or manufacture.

After Edwards-Warren brought suit in District Court, Blazer counterclaimed for damages and impleaded Michelin as a third-party defendant alleging breach of express and implied warranties. The case was tried to a jury with the Court applying Ohio's law of sales as found in the Ohio Uniform Commercial Code, Ohio Revised Code Chapter 1302. Michelin presented no evidence, electing to sustain its defense through cross-examination of Blazer's witnesses. Michelin's motions for directed verdict were denied. The jury found for Edwards-Warren against Blazer in the full amount of the account stated ($147,129.03) and for Blazer against Michelin in damages for breach of warranties.[1] It awarded Blazer $88,732.45, representing the difference between the value of the purchased tires as delivered and the value as expressly warranted by Michelin, plus $14,000 in incidental and consequential damages, for a total award of $102,732.45. Michelin perfected this appeal after its motions for judgment notwithstanding the verdict and for a new trial were denied.

The facts of the case, as developed in the record, can be briefly summarized. Early in 1973, Robert Foster, Edwards-Warren's sales manager, contacted Wilson Cyrus, Blazer's tire procurement specialist, as a potential customer for Michelin's earth-mover tires. In March, Foster visited Blazer's office and left a packet of sales literature which included Michelin's green, form warranty card. Language printed on this card limited the scope of express or implied warranties for earth-mover tires, restricted

the authority of Michelin sales representatives to make oral warranties binding upon the company, and disclaimed any liability for consequential damages. However, the card was never brought to the attention of any Blazer employee during the negotiations which preceded the sales in issue.

In May of 1973, Ray Pearson and Deems Nelson, Michelin's former earth-mover District Sales Manager and his new replacement, visited Mr. Blazer, owner of the construction company. Together they reviewed the tire performance requirements of the Shadyside highway project. They recommended a particular Michelin tire model for the job and estimated that it would provide no more than 1,200 hours of service. Mr. Blazer responded that the minimum service guarantee which he would accept was 2,500 hours as offered by one of Michelin's competitors. Mr. Pearson responded that "that would be no problem and he personally would get it handled."

In June, Cyrus contacted Foster to inquire if Edwards-Warren had tires available and what warranty terms would apply. On June 26, Foster called Cyrus back and told him that his company could supply tires and would pass along any product warranty offered by Michelin. He then handed the telephone to Deems Nelson who proceeded to calculate Blazer's anticipated tire operating costs assuming a 2,500 hour service life. Although the exact content of Nelson's conversation with Cyrus is disputed, the record supports the conclusion that Nelson agreed on Michelin's behalf to match the competition's warranty in order to obtain the business.

During the summer of 1973, Blazer continued to purchase tires of competitive manufacture. On several occasions, Nelson and Foster revisited the job site to observe tire operating conditions and to press for the sale of the Michelin product. The oral, 2500 hour performance commitment was

1. The Court submitted six interrogatories to the jury concerning the existence of an express warranty, breach of an implied warranty of merchantability, the existence of an implied warranty of fitness for a particular purpose, the existence and amount of incidental and consequential damages, the amount of principal damages, and the existence of a defect at time of product delivery. The jury's responses were consistent with the verdicts returned.

never withdrawn. Instead, Nelson asserted that Michelin's tire would outperform the ones that Blazer was currently using (which he knew to be covered by a comparable warranty).

In October 1973, Cyrus called Foster about an immediate need for tires. Edwards-Warren ordered the tires from Michelin, and they were delivered to the job site early in November on a consignment basis. Blazer forwarded a purchase order to Edwards-Warren whenever a tire was removed from inventory for use. Blazer continued to purchase Michelin tires in this fashion from November, 1973, through April, 1974. During that time 68 tires out of a total of 96 failed after only a fraction of the in-service hours warranted by Michelin. They experienced excessive heat build-up leading to tread separation and, in the most extreme cases, they actually burst into flame.

Blazer promptly informed Edwards-Warren and Michelin of the operational problems which it was experiencing. This prompted Deems Nelson to visit the job site several times to inspect damaged tires and to determine whether they were being abused. In every instance he refused to authorize price adjustments, claiming that the failures had been caused by improper use rather than defects in materials or workmanship. However, when Nelson was called to testify as Blazer's adverse witness, he admitted that 1) he had no prior experience with off-the-road tires or earth moving technology; 2) heat rather than road hazard impacts was the primary cause of the tire failures; and 3) on only one occasion out of several had he observed Blazer's trucks operating at higher speeds than recommended by Michelin.

As a result of the reduced service life of the Michelin tires, Blazer sustained additional costs for labor to handle more frequent tire changing and repair, truck rental to compensate for decreased fleet productivity, and overhead represented by other idled equipment and personnel. These extraordinary expenditures substantially exceeded the $14,000 awarded by the jury as incidental and consequential damages.

■ The crux of Michelin's argument on appeal is that it was entitled to a directed verdict as a matter of law. We disagree. There was sufficient evidence from which the jury could find that 1) Michelin's "green card" tire warranty exclusions and limitations were never brought to the attention of Blazer management, in violation of O.R.C. § 1302.29;[2] 2) Deems Nelson, Michelin's Regional Sales Manager, committed the company, during his June 26th telephone conversation with Cyrus, to an express hourly performance warranty and had the apparent authority necessary to legally bind the company, *see Dayton v. Hooglund*, 39 Ohio St. 671 (1884); *see also* 3 R. Duesenberg & L. King, Benders UCC Service § 6.08[3] (1977); 3) this offer was periodically renewed by Nelson and Foster during follow-up visits to the Shadyside job site; 4) the purchased tires inexplicably failed to perform as warranted despite the fact that they were properly used; and 5) Blazer thereby sustained proximate damages.

■ Michelin contends that Blazer is barred from recovery by its continued acceptance and use of Michelin tires over a six-month period in the face of repeated product failures. It cites *Economy Forms Corp. v. Kandy, Inc.*, 391 F.Supp. 944 (N.D. Ga.), *aff'd without opinion* 511 F.2d 1400 (5th Cir. 1974), and *United States v. Crawford*, 443 F.2d 611 (5th Cir. 1971), as authority for this proposition. Michelin's reliance on both of these cases is misplaced. They involved situations in which timely notice by the buyer to the seller of breach of warranty, required by the Uniform Commercial Code, *see* O.R.C. § 1302.65(C),[3] was either not forthcoming or in dispute at trial. In the instant case, it is conceded that Blazer seasonably notified Michelin of the tire failures and afforded Michelin's sales representative an opportunity to inspect the allegedly defective goods. Blazer cannot be held to a duty to mitigate damages after

---

**2.** UCC 2–316.

**3.** UCC 2–607.

404

Michelin expressly disclaimed liability by asserting that the tires failed because of misuse rather than latent defects. *See* 33 A.L.R.2d 513, 519–520. Nor does Blazer's acceptance of non-conforming goods foreclose its ultimate recourse to remedies otherwise available under Ohio's Uniform Commercial Code where appropriate notice of breach has been given. O.R.C. § 1302.-88.[4]

 Michelin further argues that Blazer failed to prove a prima facie case because it presented no evidence whatsoever that the tires were defective at point of purchase. Again, we cannot agree. From the eyewitness accounts of Blazer's "tireman," Herb Azbell, a man with seven and one-half years of tire maintenance experience, the jury could rationally deduce that the structural disintegration of a majority of the tires, after short periods of service under normal operating conditions, was caused by latent defects attributable to the manufacturer. *See Smith v. Uniroyal, Inc.,* 420 F.2d 438, 442 (7th Cir. 1970). We are satisfied that Blazer sustained its burden, under O.R.C. § 1302.65(D),[5] of proving that the accepted tires did not conform to Michelin's express, service life warranty. It was then the manufacturer's option to present, as an affirmative defense, evidence of product misuse or other intervening cause. *See* O.R.C. § 1302.27,[6] Comment 13. The question of breach was ultimately one of fact for resolution by the jury. *Bigelow v. Agway, Inc.,* 506 F.2d 551 (2d Cir. 1974). We cannot say that its verdict is manifestly against the weight of the evidence. *See Crown Cork & Seal Co. v. Morton Pharmaceuticals, Inc.,* 417 F.2d 921, 925 (6th Cir. 1969).

We have reviewed Michelin's remaining assignments of error and find them to be without merit.

Affirmed.

---

**4.** UCC 2–714.

**5.** UCC 2–607.

**6.** UCC 2–314.