Vernon L. OSBURN and Phyllis Osburn, husband and wife, Appellees,

v.

BENDIX HOME SYSTEMS, INC., and American Mobile Homes of Okla., Inc., Appellants, (two cases).

Nos. 50470, 50478.

Supreme Court of Oklahoma.

June 3, 1980.

Rehearing Denied July 21, 1980.

Erwin & Butts by Larry K. Lenora, Chandler, for appellant Bendix Home Systems, Inc.

Farmer, Woolsey, Tips & Gibson by Theodore P. Gibson, Tulsa, for appellant American Mobile Homes of Okla., Inc.

Richard James by R. Patrick Gilmore, Stroud, for appellees.

OPALA, Justice:

Issues presented by this appeal are: [1] Was the evidence with respect to the existence of defects sufficient to sustain a legal claim for breach of warranty? [2] Did the limitation-of-remedy clause in manufacturer's warranty "fail of its essential purpose" so as to make expanded UCC remedies available to the buyer under 12A O.S.1971 § 2–719(2)? [3] Did the trial court err in not directing the jury to apportion damages between manufacturer and dealer? and [4] Can additional counsel fees be awarded on appeal to the prevailing party in a breach-of-express-warranty case?

We hold that: [1] The evidence sufficiently established the existence of a defect in the purchased mobile home (consisting of water leakage and numerous other deficiencies) to submit for consideration of the jury the issue of a manufacturer's breach of express warranty that the home was free of "substantial defects in material and workmanship". [2] Because neither the manufacturer nor its dealer timely fulfilled its obligation under the warranty's limitation-of-remedy clause (to repair or replace defective parts), the buyer failed to receive a product free of "substantial defects in material and workmanship". The limitation clause hence "failed of its essential purpose" and expanded avenues of redress became available to the buyer under the UCC provisions. [3] In the procedural posture in

which the buyer's single claim was presented and the defense to it advanced by the two defendants, there was no error in the trial court's failure to instruct the jury on, and submit verdict forms for, apportionment of damages between the manufacturer and the dealer. [4] Counsel fees may be awarded on appeal to the prevailing party in a breach-of-express-warranty case.

Plaintiffs [buyer] purchased in August of 1973 a new "double-wide" mobile home from defendants Bendix Home Systems, Inc. [manufacturer] and American Mobile Homes of Oklahoma, Inc. [dealer]. The buyer chose a model similar to that shown him on the dealer's lot. It was shipped direct by the manufacturer who expressly warranted that it was free of substantial defects in workmanship and materials. The warranty [a] limited buyer's remedy to the cost of repair and replacement of defective parts and [b] disclaimed any other express or implied warranties. The manufacturer delivered the home to buyer's designated location. The dealer's crew placed it on the ground and then performed the necessary installation work. At his initial inspection buyer found numerous deficiencies in parts and materials. These were promptly reported to the dealer. Within a month after occupancy began, substantial water leakage made itself manifest during a rainstorm. Both the manufacturer and dealer were immediately notified of this condition. They were also reminded of the other defects yet to be remedied. The water leakage problem was not corrected until a year later. By that time the interior had been subjected to heavy water damage.

Trial resulted in a general verdict against both the manufacturer and the dealer for $5,200—the undisputed difference[1] at the time and place of acceptance between the home's actual value and the value it would have had if it had been as warranted. An attorney's fee of $1,040 was taxed as costs against the defeated litigants. Manufacturer and dealer brought

---

1. Although manufacturer elicited testimony as to the mobile home's "present value", there

was none to dispute the "difference-in-value" figure.

here separate appeals from the same judgment. These were consolidated for disposition. Dealer's appeal, though timely lodged, must be dismissed for want of due diligence in its prosecution.[2]

## I

The buyer's claim is founded on Article 2 of the Uniform Commercial Code.[3] A mobile home falls clearly within the definition of "goods" found in § 2–105. The sale of a mobile home is hence a transaction governed by the legal norms provided in that article.[4] The seller expressly warranted that the home was free of "substantial defects in workmanship and materials" and confined buyer's remedies for the enforcement of his rights. For breach of the express warranty buyer's remedy was restricted to the value of repair or replacement of defective parts.[5]

Manufacturer asserts, inter alia, the trial court erred in overruling its demurrer to buyer's evidence. This assignment must be deemed waived because the manufacturer proceeded at trial to elicit evidence in its defense.[6] Our review must hence be confined to that assignment which calls upon us to determine error in overruling manufacturer's motion for directed verdict made at the close of the evidence. In short, our task is to assay the sufficiency of the evidence as a totality to sustain the verdict.

Manufacturer asserts that the record is devoid of evidence with respect to any defect in material or workmanship. That proof, we are urged, is essential as a basis for imposition of breach-of-warranty liability. The argument advanced is that, as in actions based on the theory of products liability, so in a breach-of-warranty case, the claimant must establish the *presence of a specific defect*. The contention so advanced is without merit. Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the goods were defective in their performance or function or that they otherwise failed to conform to the warranty.[7]

The proof here amply shows that, in addition to the substantial water leakage, numerous other defects and deficiencies existed. These consisted of (a) leaking water faucets, (b) buckled wall paneling, (c) missing interior trim, (d) insecurely fastened kitchen cabinets, (e) torn carpet and (f) a roof that made rumbling noises. All of these defects came to be discovered by the buyer shortly after he had moved into the home and all were promptly reported to the

2. Dealer filed petition-in-error but has submitted no briefs in its support. Rule 1.28, Rules of Appellate Procedure, requires plaintiff-in-error to file his brief in chief within 60 days from the receipt of notice of completion of the record. Dealer's unexcused failure timely to file its brief constitutes abandonment of the appeal. *Smith v. Smith*, Okl., 463 P.2d 971, 972 [1969]; Rule 1.28, Rules of Appellate Procedure in Civil Cases, 12 O.S., Ch. 15, App. 2; Rule 15, Rules of the Supreme Court of Oklahoma, 12 O.S., Ch. 15, App. 1.

3. 12A O.S.1971 § 2–101 et seq.; All section references in the text are to 12A O.S.

4. *Jones v. Abrioni*, 350 N.E.2d 635, 642 [Ind. App.1976].

5. 12A O.S.1971 § 2–719(2) provides:
"Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."

6. *Oklahoma City-Ada-Atoka Railway Company v. Nickels*, Okl., 343 P.2d 1094, 1096 [1959];

*McMillan v. Lane Wood & Company*, Okl., 361 P.2d 487, 491 [1961]; *Chicago, Rock Island & Pacific Railroad Co. v. Kinsey*, Okl., 372 P.2d 863 [1962].

7. *Community Television Services, Inc. v. Dresser Industries, Inc.*, 586 F.2d 637 [8th Cir. 1978]; *Edwards-Warren Tire Co. v. J. J. Blazer Construction Co., Inc.*, 565 F.2d 401 [6th Cir. 1977]; *Winston Industries, Inc. v. Stuyvesant Ins. Co., Inc.*, 55 Ala.App. 525, 317 So.2d 493 [1975]; *Cox Motor Car Co. v. Castle*, 402 S.W.2d 429 [Ky.1966]; *McCarty v. E. J. Korvette, Inc.*, 28 Md.App. 421, 347 A.2d 253 [1975]; *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243 [Mo.App. 1978]; *Arnold v. Ford Motor Co.*, 90 N.M. 549, 566 P.2d 98 [1977]; *Bell v. Harrington Mfg. Co.*, 265 S.C. 468, 219 S.E.2d 906 [1975]; *Drier v. Perfection, Inc.*, 259 N.W.2d 496 [S.D.1977]; White & Summers, Handbook of the Law Under the Uniform Commercial Code § 9–1 [1972].

dealer pursuant to the warranty require-ments. The manufacturer instructed the buyer to hire someone locally to make the repairs and to send any bills to them. One bill was paid in full and only a portion of a second bill was paid.

Although the evidence does not identify the factor precipitating the leakage which caused interior water damage to the walls, floorboards, draperies and carpets, there was sufficient proof from which the jury could infer that the problem was attributa-ble to faulty manufacture or assembly. Dealer and manufacturer made only mini-mal effort to correct the substantially flawed product. The home had been heavi-ly damaged before necessary repairs—made a year later—finally brought about the long-needed rectification.

Viewing the record, as we must, in the light most favorable to the buyer,[8] and as-suming all proof in conflict stands resolved by the verdict in buyer's favor, we conclude that the evidence—without identifying a specific defect in manufacture or assem-bly—is sufficient to support the verdict of liability for breach of express warranty.

## II

The warranty here in suit re-stricts the buyer's right of recovery for its breach to "repair or replacement of defec-tive parts".[9] The limitation so imposed is not, on its face, unconscionable.[10] In fact, § 2–719(1)(a) expressly sanctions its employ-ment.[11] Limiting the buyer to the remedy of repair or replacement does not appear unfair because the warranty clause amply assures him of receiving the goods which either do or will conform to the contract. The purpose of the clause, as applied to this case, was hence to provide the buyer with a mobile home substantially free of defects. Implicit in the warranty-imposed obligation to repair or replace is the duty of providing conformable goods within a reasonable time after a defect in the original delivery is discovered.[12] Where the seller is afforded a

8. *Condo v. Beal*, Okl., 424 P.2d 48 [1967].

9. The manufacturer's warranty here in suit pro-vided in pertinent part:
"Bendix home Systems, Inc. hereby warrants, to the original retail purchaser that each new mobile home manufactured by it shall be free from any substantial defects in material or workmanship. The exclusive remedy for any such defects shall be the obligation of Bendix Home Systems, Inc. *to repair or replace, at its option, any part of parts found by Bendix Home Systems, Inc. to be substantially defec-tive in materials or workmanship* within one year after first delivery of the mobile home to the original purchaser, provided the purchaser gives written notice of such defects to Bendix Home Systems, Inc. or their dealer from whom he purchased the unit at their business address not later than one year and 10 days after date of delivery. * * * *" [Emphasis added]

10. *Cox Motor Car Company v. Castle*, supra note 7; *Potomac Electric Pow. Co. v. Westing-house Elec. Corp.*, 385 F.Supp. 572 [D.C.1974].

11. § 2–719(1) provides in pertinent part:
"(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of dam-ages,
(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under

this Article, as by limiting the buyer's reme-dies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and * *"

12. What is a "reasonable time" for taking any action under the UCC depends on the nature, purpose and circumstances of such action. 12A O.S.1971 § 1–204(2). The terms of § 2–719(1) permit parties to tailor the outer limit of allowable recovery to their particular require-ments, giving effect to reasonable agreements limiting or modifying existing remedies. They are designed to facilitate a fair recompense for breach of the contractual obligations. UCC § 2–719, Official Comment No. 1. *Conte v. Dwan Lincoln-Mercury*, 172 Conn. 112, 374 A.2d 144 [1976]; *Moore v. Howard Pontiac-American, Inc.*, 492 S.W.2d 227 [Tenn.App. 1972]; *Ford Motor Company v. Mayes*, 575 S.W.2d 480 [Ky.App.1979]; *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 265 N.W.2d 513 [1978]. "The purpose of an exclusive remedy of replacement or repair of defective parts, whose presence constitute a breach of an ex-press warranty, is to give the seller an opportu-nity to make the goods conforming while limit-ing the risks to which he is subject by exclud-ing direct and consequential damages that might otherwise arise." *Beal v. General Mo-tors Corp.*, 354 F.Supp. 423, 426 [D.Del.1973].

reasonable opportunity to correct the defect and fails timely to respond or is repeatedly unsuccessful in the efforts to meet the warranty-imposed obligation, the limitation of remedy is deemed to have failed of its essential purpose *eo instante* and without the necessity of a prior judicial declaration.[13] The buyer is then free to invoke any of the broader remedies available under the Code.[14]

■ Neither the seller nor the manufacturer was successful in the effort of rectifying the faulty conditions before the home was severely damaged by water leakage. When the home was not made to conform to the warranty within a reasonable time, the buyer—then left without the substantial value of his bargain—was relieved by the Code of the warranty-imposed limitation and hence able to seek broader recovery.

■ Manufacturer next complains that the trial court gave improper instructions upon the measure of damages for the breach in suit. The charge given called upon the jury to apply the difference—at the time and place of acceptance—between the actual value of the goods accepted and the value they would have had if they had been as warranted.[15] This measure is, of course, proper when the evidence shows, as it did here, that the warranty-imposed limited-recovery clause "failed of its essential purpose." [16] We need not decide here whether the buyer's right of access to the broader recovery sought should have been submitted, under a specific charge, as a fact issue for the jury.[17] The manufacturer did not request an instruction to that effect. Rather, it submitted one which was substantially similar to that given by the judge. Moreover, the manufacturer's theory of defense did not dispute that there was a failure substantially to remedy the faulty conditions within a reasonable time. For an escape from liability manufacturer relied on (a) defective installation by the dealer, (b) absence of proof as to some specifically identifiable defect in manufacture and (c) buyer's misuse of the product by unauthorized post-installation alterations. In short, buyer's legal basis for expanded recovery— "the essential failure of purpose"—did not constitute here a disputed fact issue on

**13.** When a manufacturer limits its obligation to repair and replacement of defective parts, and repeatedly fails to correct the defect as promised within a reasonable time, it is liable for the breach of that promise as a breach of warranty. *Matthews v. Ford Motor Co.*, 479 F.2d 399 [4th Cir. 1973]; *Courtesy Ford Sales, Inc. v. Farrior*, 53 Ala.App. 94, 298 So.2d 26, 33 [1974]; *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, 148 [1965]; *John Deere Industrial Equipment Co., Inc. v. Ponder*, 135 Ga. App. 688, 218 S.E.2d 686, 687 [1975]; *Jacobs v. Metro Chrysler-Plymouth, Inc.*, 125 Ga.App. 462, 188 S.E.2d 250 [1972]. The fact that a manufacturer in good faith attempts to repair the defect whenever requested to do so is not a fulfillment of the warranty; he must demonstrate that the defect is permanently remedied as promised in the express warranty. *John Deere Industrial Equipment Co. v. Ponder*, supra; *Beech Aircraft Corp. v. Flexible Tubing Corp.*, 270 F.Supp. 548, 564 [1967]. He can be liable for failure to fulfill the warranty obligation even if his failure to repair is neither wilful nor negligent. *Soo Line R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1371 [8th Cir. 1977]; *Beal v. General Motors Corp.*, supra note 12.

**14.** 12A O.S.1971 § 2–719(2), supra note 5.

**15.** 12A O.S.1971 § 2–714(2).

**16.** In *Adams v. J. I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1, 6–7 [1970] the question was asked: "May an implied warranty be found and may consequential damages be sought despite the fact that the written warranty given at the time of sale provides it is in lieu of all other warranties, express, implied, or statutory, limits liability to that of repairs or replacement of defective parts, and negates liability for consequential damages?" The court pointed out that from an agreement to repair or replace the defective parts of the vehicle there arose an implied obligation that the manufacturer and dealer would correct the defects within a reasonable time. Buyer was held relieved of the warranty-imposed limitations on recovery because of defendants' "wilfully dilatory or negligent" conduct in failing to make repairs within a reasonable time. The buyer was held entitled to recovery based on the "difference-in-value" rule [§ 2–714(2)] and consequential and incidental damages [§ 2–714(3)].

**17.** Manufacturer relies upon *Riley v. Ford Motor Company*, 442 F.2d 670 [5th Cir. 1971] wherein this issue was presented to the jury but not by a specific instruction.

which instructions should have been submitted because it formed a distinct theory of defense for jury consideration.[18] Manufacturer's complaint with respect to want of an instruction on buyer's right to seek an expanded recovery appears to be but a post-trial afterthought.

### III

Manufacturer further asserts that the trial court erred in not inviting the jury to render separate verdicts against the two defendants and to apportion damages between them. The jury was provided with several verdict forms by which they were afforded the freedom to find for or against both defendants or for or against only one of them. Manufacturer's argument emphasizes that the parties-defendant neither contractually nor by law had assumed joint liability for breach of warranty to the buyer. Since the warranty itself provided clearly separate responsibilities to be discharged by the two parties, the argument continues, the jury should not have been precluded by the verdict forms used and by the instructions given from apportioning the damages between the defendants in the event that the damages were found to be attributable to the combined effect of dealer's faulty installation or improper assembly and of the manufacturer's defective product.

■ The buyer declared his claim against both defendants—manufacturer and dealer—upon a single cause of action. The defendants did not challenge the integrity of the claim by motion to state it separately against each party. Throughout the trial the defendants acquitted themselves in a manner consistent with their recognition of the claim's integrity as it was pled in the petition. In the form in which

that claim stood, it sought to impose on two different entities indivisible liability for a single recovery. Within the framework of buyer's theory and of the defenses advanced thereto there was no room for assessment of comparative responsibility. The judge's actions in instructing the jury and in submitting the verdict forms were clearly consistent with the posture of the pleadings, the evidence submitted and the acquittance of the parties throughout the trial.

The rights between the manufacturer and its dealer were not subject to adjustment in this litigation because [1] there was no crossclaim either by the manufacturer against the dealer—or vice versa—which would have lain under 12 O.S.1971 § 323 nor [2] was the buyer required to attribute the defective conditions to some precise origin. The rights between the defendants, *inter sese*, did not form a litigable issue in the case. No proper legal mechanism was ever set in motion for severance and apportionment of the co-extensive liability sought to be imposed by the buyer.[19]

The situation here can be likened to that which exists when a plaintiff declares upon a single cause of action against a tortfeasor who is the promisee of an agreement by a third party to indemnify him for some, but not all, the elements of the tort for vindication of which the action was brought. The apportionment of plaintiff's recovery between the tortfeasor-indemnitee and his indemnitor cannot always be made in the trial of the issues raised by the main tort action and may hence have to await disposition until the crossclaim is reached for decision.[20] This is essentially what will have to take place here in order to resolve the claims by manufacturer and dealer *inter se*. But since no crossclaim is on file, another suit will be necessary to adjust these rights.

---

18. If the court fails to give a proper instruction *upon the measure of damages*, complaining counsel *must* request or submit appropriate supplementary instructions on the subject. *Hartford Accident & Indem. Co. v. Chaney*, 191 Okl. 523, 131 P.2d 102 [1942]. *Booth Tank Co. v. Symes*, Okl., 394 P.2d 493 [1964]; *Binning v. Safeway Stores, Inc.*, Okl., 532 P.2d 1198 [1975].

19. *Matthews v. Ford Motor Co.*, 479 F.2d 399 [4th Cir. 1973].

20. *Chicago, Rock Island & Pacific R. Co. v. Davila*, Okl., 489 P.2d 760 [1971].

■ The manufacturer's quest for apportionment of damages must fail here for yet another important reason. While its counsel stated into the record, in advance of submission, a general objection to the verdict forms, he did not then articulate his demand for a comparative assessment of liability. Moreover, the verdict was accepted in open court without any objection from the manufacturer.[21]

There was hence no error in the trial court's failure to direct apportionment of liability.

### IV

■ Lastly, we consider buyer's motion for an additional allowance of attorney's fee for services on appeal.[22] As the prevailing party in a breach-of-an-express-warranty action, buyer was clearly entitled to that allowance below under the provisions of 12 O.S.Supp.1979 § 939. He may be granted a further award here.[23] We find the sum of $950.00 constitutes a reasonable compensation for legal services rendered to the buyer in this court and tax that amount as costs herein.

AFFIRMED.

All Justices concur.

---

**21.** 12 O.S.1971 § 586; *Brown v. Tull,* 65 Okl. 119, 164 P. 785, 787 [1917]; *Williams & Miller Gin Co. v. Baker Cotton Oil Co.,* 108 Okl. 127, 235 P. 185, 188 [1925]; *Morgan v. Oklahoma Natural Gas Co.,* Okl., 561 P.2d 1363 [1977]; *Downum v. Muskogee Stockyards & Livestock Auction, Inc.,* Okl., 565 P.2d 368 [1977].

**22.** Buyer was awarded counsel fee below. The allowance did not include services to be rendered on appeal.

**23.** Additional attorney's fee may be awarded to successful litigant for services on appeal in cases brought under statutes which allow that fee to be taxed as costs in the trial court. *Associates Financial Services, Inc. v. Millsap,* Okl., 570 P.2d 323 [1977]; *Falkner v. Thompson,* Okl.App., 585 P.2d 403 [1978]; *Parkhill Truck Company v. Reynolds,* Okl., 359 P.2d 1064, 1068 [1961]. Recovery of attorney's fee here is based not on the Code but on 12 O.S. Supp.1979 § 939. *Murray v. Holiday Rambler, Inc.,* supra note 12.