0215

Robert D. BROOM, Respondent, v. Allen MARSHALL, Colonel O. Rogers and
John Taylor, Individually, and Columbia Architectural Group, Inc., De-
fendants, of whom Allen Marshall, Colonel O. Rogers, and John Taylor,
Individually, are Appellants.

(328 S. E. (2d) 639)

Court of Appeals

*Robert L. Jackson,* Columbia, *for appellants.*

*Hammond A. Beale,* Columbia, *for respondent.*

## ORDER

Heard Feb. 28, 1984.

Decided July 2, 1984.

Reheard Oct. 17, 1984.

Rehearing Granted April 10, 1985.

GOOLSBY, Judge:

This action for breach of a construction contract was initiated by the respondent Robert D. Broom against the appellants Allen Marshall, Colonel O. Rogers, and John Taylor, individually, and against the defendant Columbia Architectural Group, Inc. The issues presented on appeal are whether the trial court erred in failing to grant appellants' motions for a directed verdict and for judgment *non obstante verdicto (n.o.v.)* and whether the jury verdict was excessive so as to indicate passion, prejudice, or caprice.

We hold that the trial court erred as a matter of law in failing to direct a verdict for the appellants and in failing to grant their motion for judgment *n.o.v.* and therefore reverse the judgment below.

Broom, an architectural draftsman, contacted Columbia Architectural Group, Inc., for the purpose of obtaining plans for a house he wanted to build on his vacant lot. Columbia Architectural Group, Inc., is a corporation whose shareholders include Marshall, Rogers, and Taylor. Taylor drew the plans according to Broom's request.

Broom then signed a contract with CAG Investments, Inc., on April 19, 1977 for the construction of his home pursuant to the specifications and plans drawn by Taylor. Rogers signed the contract as an authorized agent for CAG Investments. Although the heading on the contract listed CAG Invest-

ments as a corporation, it was a partnership with Marshall, Rogers, Taylor, and James E. Bruce as partners.

CAG Investments proceeded to build the house. During its construction, Broom and his wife dealt with Rogers. The Brooms moved into the house in September 1977 and began to encounter numerous problems. They submitted to Rogers several "punch lists" of items that needed repair. Among the main problems were the incorrect application of redwood siding, an improperly built chimney, uncaulked windows, clogged plumbing, unaligned doors, and warped floors. Some items were repaired by CAG Investments, and others were repaired through Broom's own efforts.

Broom brought suit against the appellants individually and the architectural corporation alleging a breach of contract for the failure to construct the residence in a good and workmanlike manner. He did not name Bruce as a defendant. Broom sought $30,000 in damages. Columbia Architectural Group, Inc., was dismissed from the suit at trial for reasons not disclosed in the trial transcript. In their answer, the appellants specifically denied they contracted individually with Broom alleging that Broom contracted with CAG Investments, a partnership, and that Rogers signed the contract as an agent for the partnership.

A jury verdict was subsequently returned against Marshall, Rogers, and Taylor for $30,000. Their motions for a non-suit, directed verdict, and judgment *n.o.v.* were all denied.

In an action at law tried by a jury, our standard of review applies only to the correction of errors of law.

The jury's findings of fact will not be disturbed on appeal unless the record discloses that there is no evidence to support its findings. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). The jury's verdict can be reversed when the only reasonable inference that can be drawn from the evidence is one contrary to the factual findings implicit in the jury's verdict. *Bell v. Harrington Manufacturing Co.*, 265 S. C. 468, 219 S. E. (2d) 906 (1975); *Moran v. Jones*, 281 S. C. 270, 315 S. E. (2d) 136 (1984).

## I.

The first issue concerns whether the trial court erred in failing to grant the appellants' motion for a directed verdict and judgment *n.o.v.* In determining these mo-

tions, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Skipper v. Hartley*, 242 S. C. 221, 130 S. E. (2d) 486 (1963); *Mylin v. Allen-White Pontiac, Inc.*, 281 S. C. 174, 314 S. E. (2d) 354 (S. C. App. 1984).

The appellants' motions were based upon the ground that the evidence showed that Broom entered into a contract with CAG Investments, a partnership, and not with individuals who were members of the partnership. Broom expressly maintained throughout the trial and during oral argument before this court that he sought recovery against the named individuals and not the partnership.

In order for Broom in this instance to recover against Marshall, Rogers, and Taylor, individually, he must establish that a contract existed between him and each appellant. *See* 17A C.J.S. *Contracts* § 579 at 1115 (1963); *Dehler v. Setliff*, 153 Ga. App. 796, 226 S. E. (2d) 516 (1980). The evidence presented consisted of the following testimony:

(a) Broom stated that he met with Taylor and Rogers to sign the building contract. The contract to construct the home was with CAG Investments, which he discovered was a partnership. Further, he admitted that he did not enter into a contract with Marshall.[1]

---

[1] The following excerpts from Broom's testimony at trial demonstrate that Broom knew he was dealing with a partnership:

Q. (By Mr. Beale) All right, sir, . . . what's the name of the group at the top of that?
A. (Mr. Broom) CAG Investments, Inc.

\* \* \* \* \*

Q. [D]id you later determine that CAG Investments was a partnership with Mr. Rogers and his other two partners? . . .

\* \* \* \* \*

A. Yes, sir, I did.
Q. All right. Who were you doing business with when you entered into this contract?
A. I was doing business with CAG Investments, the partners are John Taylor, Colonel Rogers and Allen Marshall.
Q. (By Mr. Jackson) Did you have a contract with Allen Marshall to construct your home?
A. I don't believe I had a contract with Allen Marshall.
Q. . . . Was your contract to construct your home with CAG Investments?

(b) Broom's wife testified that she and her husband contracted with Rogers, Marshall, and Taylor as partners in CAG Investments to build their home.[2]

(c) Taylor, who was subpoenaed as a witness for Broom, stated that he, Marshall, Rogers and Bruce were stockholders in Columbia Architectural Group, Inc., and were partners in a building company, CAG Investments. Taylor produced the partnership income tax return for 1977 which showed that CAG Investments was a partnership when the building contract was signed. Rogers, according to Taylor, had authority to act on behalf of the partnership and thereby bind it when he signed the building contract.

(d) The appellants' witness Cynthia Hilton corroborated Taylor's testimony. Hilton was office manager for Columbia Architectural Group, Inc. Taylor, Marshall, Rogers, and Bruce are shareholders. In addition, during 1977 when Brooms' home was under construction, Hilton assisted CAG Investments by working with Rogers to obtain the necessary building materials and subcontractors.

(e) During cross-examination, Hilton stated that Marshall signed the application for a building permit on behalf of CAG Investments. Even though the letterhead on the stationery used to draft the contract listed CAG Investments as being

---

A. That's correct.
Q. And to the best of your knowledge, is CAG Investments a partnership?
A. Yes, sir.

\* \* \* \* \*

Furthermore, on May 2, 1978, approximately ten months before the summons and complaint in this action were served, Broom reported in a complaint to the South Carolina Residential Home Builders Commission that "[a]fter dozens of phone calls and several meetings with the *partners* of CAG Investments (Colonel Rogers, John Taylor and Allen Marshall), my wife and I are convinced that they have certainly been given sufficient time to finish the house" and that "when I call CAG, the *partners* are not available and do not return my calls." [Emphasis added.]

---

[2] *The testimony that supports this statement was more or less volunteered.* *Viz.:*

Q. (By Mr. Beale) ... Is there anything else that you want to tell the Jury before I turn you over to Mr. Jackson?
A. (By Mr. Broom) ... We signed a contract with Mr. Rogers and Mr. Marshall and Mr. Taylor as partners in CAG.

incorporated, this was a printing mistake. CAG Investments was in fact a partnership and Rogers signed the contract with the knowledge of the other partners on behalf of the partnership.

On the other hand, no evidence can be found in the record that either Broom or his wife ever thought that they were contracting with Rogers, Taylor, and Marshall as individuals. The evidence suggests only that they believed they were dealing with a business entity, either a corporation or a partnership.[3]

Although the evidence does not support the finding that a contract existed between Broom and each appellant individually, it does support a finding that a contract existed between Broom and a partnership whose members included each appellant. "A partnership under the law is an entity separate and distinct from the persons who compose it." *Chitwood v. McMillan*, 189 S. C. 262, 267, 1 S. E. (2d) 162, 164 (1939). "This principle has been applied solely in determining the legal relationships and liabilities of the partners." *Marvil Properties v. Fripp Island Development Corp.*, 273 S. C. 619, 620, 258 S. E. (2d) 106, 107 (1979). Thus, "[w]hen a partnership enters into a contract, . . . such contract is not with the individual members of the firm but with the partnership as an entity distinct from its members." *Chitwood v. McMillan*, 189 S. C. at 268, 1 S. E. (2d) 162.

Broom does not proceed against the appellants on the theory that they were members of a pretended corporation, in which case each of them could be held personally and individually liable [*Guilford Builders Supply Co. v. Reynolds*, 249 N. C. 612, 107 S. E. (2d) 80 (1959) ]; and, as we mentioned, he does not seek recovery against the appellants on the basis that a partnership contract existed whereby each partner is liable jointly. Instead, Broom asserts that the appellants are individually liable because the appellants, not an alleged partnership or pretended corporation, "entered into a written contract . . . to build" him a home.

Broom also claims that because the partnership entity did not exist at the time the suit was filed he had no alternative but to sue the appellants individually.

---

[3] For example, in a letter dated October 22, 1977, Broom addressed a letter to "Mr. Colonel O. Rogers, *CAG Investment Inc.*" [Emphasis added.]

Broom improperly relied on this assumption. Even if the partnership had been dissolved, and Rogers testified that it still exists, although it is inactive, the dissolution of the partnership did "not of itself discharge the existing liability of any partner." S. C. Code of Laws § 33-41-1010 (1976); 60 Am. Jur. (2d) *Partnership* § 208 at 120 (1972). "The right of third persons to enforce obligations and contracts binding on a firm at the time of its dissolution usually continues after the termination of the partnership." *Id.; see* S. C. Code of Laws § 33-41-920 (1976).

The evidence at trial, therefore, proved an obligation by a partnership to construct a home in a good and workmanlike manner. The record is devoid of any evidence from which the jury could determine that any of the appellants contracted in his individual capacity to construct Broom's home; therefore, the appellants' motion for a directed verdict and judgment *n.o.v.* should have been granted.[4]

---

[4] The dissenting opinion would hold Rogers "individually liable on the contract he signed" and would hold that, because of "his conduct, Rogers bound his co-defendants Marshall and Taylor who . . . disclosed themselves to be his partners." Our Brother, in other words, would hold Rogers liable as an individuial and Marshall and Taylor liable as his partners in their individual capacities.

In our Brother's view, Rogers' individual liability is central to the individual liability of the other two appellants. The authorities cited in support of his conclusion that Rogers should be held individually liable on the contract are a Georgia case, *Don Swann Sales Corp. v. Echols*, 160 Ga. App. 539, 287 S. E. (2d) 577 (1981) and a South Carolina case, *Bulova Watch Co. v. Roberts Jewelers of Rock Hill, Inc.*, 240 S. C. 280, 125 S. E. (2d) 643 (1962).

*Don Swann* is not at all like the case here. It simply holds that the defense of corporation by estoppel is not available so as to allow an individual defendant to deny liability on an open account where the corporation was not in existence at the time the plaintiff conducted business with the defendant. The appellants in this case neither claim they were a corporation nor assert the defense of corporation by estoppel. They maintain that they were, and still are, a partnership and liable as such and that Rogers acted as the partnership's agent when he entered into the contract with Broom. Furthermore, as pointed out in the body of our opinion, Broom does not proceed against Rogers, Marshall, and Taylor upon the theory that they purported to act for a non-existent corporation.

*Bulova Watch* is likewise inapposite. That case involved an individual who continued to order goods in his own name after the charter of the corporation which operated a jewelry store and in which he held stock was cancelled. There was no evidence here that appellants ever dealt with Broom in their individual capacities. Moreover, Broom nowhere contends, as the plaintiff did in *Bulova Watch*, that Rogers and the others acted "for and on the behalf of a non-existent corporation." Again, the theory Broom proceeds upon is that the three appellants contracted with him individually.

## II.

We need not address the second issue raised by the appellants. Since we have determined that the trial court erred in not granting the motions for a directed verdict and for judgment *n.o.v.*, it is unnecessary for us to determine whether the jury verdict was excessive so as to indicate passion, prejudice, or caprice.

For the foregoing reasons the judgment[5] of the trial court is

Reversed.

CURETON, J., concurs and GARDNER, J., dissents.

GARDNER, Judge, dissenting:

I find myself in very strong disagreement with my friends of the majority, both as to their findings of fact and conclusions of the applicable law in this case.

Colonel Rogers, Mr. Marshall and Mr. Taylor were secret partners (C.A.G. Investments) who held themselves out to the public as owners of a real corporation, Columbia Architectural Group, Inc. and C.A.G. Investments, Inc., a fictitious corporation. No city license or county license has been issued to the secret partnership, C.A.G. Investments, nor is there anything of record indicating public knowledge of the existence of the alleged partnership.

It was only after the institution of this lawsuit that Colonel Rogers, *et al.*, sought to avoid liability by hiding behind the veil of a legal entity in the form of a partnership, which has no address, phone number of its own, license to do business, or property, real or personal, and which, it is claimed, was dissolved before institution of this suit. A careful review of the record will reveal this now dissolved partnership, formerly a secret one, to be a tool for evasion of liability found and established by jury verdict, which was sustained by a learned trial judge, who saw and heard the witnesses.

---

[5] At no time did Broom move to amend the complaint pursuant to Section 15-13-920 of the South Carolina Code of Laws (1976) to change the action from one against individuals to an action against a partnership. *See* 59 Am.Jur.2d *Parties* § 287 at 766 (1971) ("An amendment has been held proper which charges as partners defendants who were sued as individuals . . ."); *see also Baker v. Hornik*, 51 S. C. 313, 28 S. E. 941 (1898) (where the court held it was within the discretion of the trial court to allow an amendment to a complaint converting it from an action against a partnership to one against the individual members thereof).

The majority opinion contains some quotes from the record which, I submit, are out of context. The reader is asked to be aware that Mr. Broom has a layman's understanding of the meaning of the word "partners," *i.e.*, associates; my friends of the majority opinion adhere to a lawyer's concept of the word and would charge Mr. Broom with all the legal implications of partnership law; this in spite of the fact that the record establishes that Mr. Broom did not know that he was not dealing with a corporation until shortly before the trial.

The majority opinion is based upon the trial judge's failure to direct a verdict for the defendants and his failure to grant judgment *n.o.v.* The trial judge was controlled by the rule of law that the evidence on motions for a directed verdict and judgment *n.o.v.* must be construed in a light most favorable to the party against whom the motions are directed; if there is any testimony tending to prove the allegations of the complaint, such motions must be refused. *Melton v. Williams*, 281 S. C. 182, 314 S. E. (2d) 612 (S. C. App. 1984).

On appeal we can reverse a verdict of a jury only if there is no evidentiary support for the verdict. *Causey v. Blanton*, 281 S. C. 163, 314 S. E. (2d) 346 (S. C. App. 1984).

I submit that the overwhelming weight of evidence supported the trial judge's denial of the motions for directed verdict and judgment *n.o.v.* I further submit that the evidence of record on appeal more than abundantly supports the verdict of the jury.

The majority opinion finds as a matter of fact that, "The evidence at trial, therefore, proved an obligation by a partnership to construct a home in a good and workmanlike manner." This finding of fact, which is contrary to what the jury found, is, in the opinion of the writer of this dissenting opinion, unsupported by the evidence. Nowhere in the record is there testimony to the effect that Colonel Rogers disclosed at the time of signing the contract to Mr. Broom that he signed a contract as a partner in C.A.G. Investments, a partnership. Even if the testimony is construed to support this alleged proposition, the vast preponderance of the evidence establishes that Mr. Broom believed he was entering into a contract with either Columbia Architectural Group, Inc. or its supposed affiliate C.A.G. Investments, Inc. The contract was written on a form of C.A.G. Investments, Inc. This contract

listed Colonel Rogers as the architect and the record is bare of evidence indicating that, at the time the contract was entered into, Colonel Rogers disclosed the fact that he would later contend that he was acting as a member of a partnership. To the contrary, Mr. Broom testified that he discovered only a few weeks before trial that C.A.G. Investments was not incorporated; the truth of this testimony is established by the payment of the contract indebtedness to Columbia Architectural Group, Inc., and correspondence dated after completion of the house.

A brief review of the evidence of record is needed. The defendants Marshall, Rogers and Taylor are the co-owners of Columbia Architectural Group, Inc. Mr. Broom employed Columbia Architectural Group, Inc. to draw the plans for the house, which is the subject of this lawsuit. While drawing the plans, Mr. Taylor told Mr. Broom that they (the owners of Columbia Architectural Group, Inc.) were also in the building business.[1] Mr. Taylor then introduced Mr. Broom to Colonel Rogers. Colonel Rogers prepared a written contract on a form of a nonexistent corporation, *i.e.*, C.A.G. Investments, Inc.; this form reflects the same phone number and post office address as that of Columbia Architectural Group, Inc. Mr. Broom obviously believed, with good cause, that Columbia Architectural Group, Inc. and C.A.G. Investments, Inc. were one and the same.

As late as October 18, 1977, Colonel Rogers wrote a letter *on Columbia Architectural Group, Inc. stationery* to Mr. Broom concerning Broom's complaints about the house. All of the correspondence during the construction and after the construction of the house from Broom to Colonel Rogers was addressed to C.A.G. Investments, Inc. On the third day of May 1978, nearly a year after Broom entered into a contract with C.A.G. Investments, Inc., Mr. Broom filed a complaint with the South Carolina Residential Home Builders Commission against C.A.G. Investments, Inc.[2]

---

[1] As the house was being constructed, Mr. Broom and his lending institution made all checks payable to Columbia Architectural Group, Inc. (originally a defendant in this case). These checks, amounting to fifty odd thousands of dollars, were accepted by Colonel Rogers.

[2] From an affidavit attached to this complaint, the majority opinion draws strained conclusions. In the affidavit, Mr. Broom uses the word "partners," clearly meaning associates. He filed the complaint against C.A.G. Investment, Inc. and in the attached affidavit referred to the supposed owners of the corporation as partners.

Mr. Broom testified that he discovered only a few weeks before trial that C.A.G. Investments, Inc., was not incorporated but was in fact a partnership. There is testimony of Mr. Broom that Marshall, Rogers and Taylor were partners; but the use of the word "partners" by Mr. Broom is obviously, when taken in the context of the record, *a layman's way of saying that they were associates* or co-owners of the corporations.

The writer has reviewed the above evidence of record simply for the purpose of showing that the overwhelming evidence of record establishes there was never a disclosure to Mr. Broom by Colonel Rogers that he, Colonel Rogers, was signing the building contract as a member of a partnership, as he now contends. The record totally negates disclosure to Mr. Broom of the alleged partnership. To the contrary, the record shows that, without doubt, Mr. Broom felt, with good cause, that he was dealing with either Columbia Architectural Group, Inc. or C.A.G. Investments, Inc. and that the appellants (defendants) were co-owners (or partners in lay language) of the corporations.

From the above facts this court is, in my opinion, obliged to hold that Colonel Rogers is individually liable on the contract he signed. "An agent ... *if he contracts as agent for an undisclosed principal, will be personally liable unless there is a mutual intention of the parties to the contrary.* " 3 C.J.S., *Agency* § 369, (1973). One who assumes to act as agent for a nonexistent principal or one having no legal status renders himself individually liable in contracts so made. *Don Swann Sales Corp. v. Echols,* 160 Ga. App. 539, 287 S. E. (2d) 577 (1981); *Bulova Watch Co. v. Roberts Jewelers of Rock Hill, Inc.,* 240 S. C. 280, 125 S. E. (2d) 643 (1962).

Additionally, I submit, this court should hold that Rogers is not only liable individually but also, that, by his conduct, Rogers bound his co-defendants Marshall and Taylor, who, after the institution of this action, disclosed themselves to be his partners.

Section 33-41-350, South Carolina Code of Laws, 1976, is as follows:

When, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or

injury is cause to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Section 33-41-370(1) South Carolina Code of Laws, 1976, is as follows:

All partners are liable: (1) Jointly and severally for everything chargeable to the partnership *under §§ 33-41-350 and 33-41-360.* (Emphasis ours.)

A breach of contract is considered a "wrongful act" in contract law. *Matter of Chiappinelli-Marx, Inc.,* 32 Misc. (2d) 621, 223 N.Y.S. (2d) 943 (1961). Additionally, the quoted misrepresentations by Colonel Rogers are obviously wrongful acts.

Thus, I submit, Colonel Rogers bound his newly disclosed partners by his wrongful acts which injured Mr. Broom.

The writer of this opinion is deeply concerned that Mr. Broom invested his life savings in the subject house. The jury found that he had suffered $30,000 damages. Whether Mr. Broom dealt with a partnership is the very issue made by the pleadings, submitted to the jury and resolved by the jury in favor of Mr. Broom. I would not divest the jury of their prerogative in deciding this issue of fact.

I would affirm.

## ORDER ON REHEARING

Having considered the arguments presented by counsel on rehearing, we remain of the opinion that the trial judge erred as a matter of law in failing to direct a verdict for the appellants and in failing to grant their motion for judgment *n.o.v.* and that the judgment below should be reversed. The stay of the remittitur heretofore granted is revoked.

It is so ordered.

CURETON and GOOLSBY, JJ., concur.

GARDNER, J., dissents.

GARDNER, Judge (dissenting):

I adhere to my original dissent with the following additional observations. The sole issue raised by the appellant and addressed by the court is "if a partnership is doing business in the State of South Carolina, may the parties or any of them be sued severally and individually as individuals upon a partnership contract."

The writer's dissenting opinion dealth only with the individual liability of Colonel Rogers and the resulting partnership liability of Marshall and Taylor. The dissenting opinion holds, with dispositive authority, that one who signs a contract with a fictitious corporation is individually liable on the contract signed. In this connection, since the filing of the opinion in this case, the writer has observed that the first answer filed by Colonel Rogers, *et al.* actually alleged that the building contract was with the corporation, CAG Investments, Inc., which it developed was a fictitous corporation. This first answer was verified by Colonel Rogers and is startling evidence of the validity of the dissenting opinion filed by this writer.

The appellant's position is that the partnership itself must be named as a separate party defendant in actions against a partnership. The majority opinion accepted this argument and reversed the general verdict rendered by the jury.

The clear holding of *Marvil Properties,* cited in the majority opinion, is that a partnership is not such a legal entity as to allow it to sue or be sued as such. There can be no other construction of *Marvil Properties,* which is dispositive of the case now before the court, and *Marvil* clearly holds that a partnership cannot be sued except by suits against the individual partners.

The writer additionally notes that *Marvil* limited the holding of *Chitwood v. McMillan,* cited by the majority opinion, by this language:

> The statement in *Chitwood v. McMillan,* 189 S. C. 262, 1 S. E. (2d) 162 [sic] that "A partnership under the law is an entity, separate and distinct from the persons who compose it," does not, as argued support the conclusion that a partnership may sue in its name. This principle has been applied solely in determining the legal relationships and

liabilities of the partners, and has never been construed in this State as permitting a suit only in the partnership name.

The individual respondents of this case allege in their amended answer that Broom entered into a contract with CAG Investments, a partnership, and that the contract was signed by Colonel Rogers as an agent of the partnership. This answer, by the well-recognized doctrine of Aider,[1] supplies Broom's complaint with an allegation that the individual defendants acted as partners; this was the interpretation of trial judge of the issues presented by the jury on the law of partnership and the liability of the partners thereof. The defendants below made no motion for a special verdict against the individuals as members of a partnership as opposed to a verdict against only the individual defendants as such. The verdict of the jury was a general verdict and consequently a verdict against the defendants both individually and as partners. Under either theory the verdict below should stand.

I would affirm the appealed judgment.

---

[1] See 61A Am. Jur. (2d), *Pleadings*, Section 405.