16468

CHAPMAN v. ASSOCIATED TRANSPORT, INC.
(63 S. E. (2d) 465)

*Messrs. Hingson & Todd,* of Greenville, *for Appellant,*

*Messrs. Mann, Arnold & Mann,* of Greenville, *for Respondent,*

February 16, 1951.

FISHBURNE, Justice.

Ada Jane Chapman instituted this action by her guardian *ad litem,* James H. Chapman, against the defendant, Associated Transport, Inc., to recover damages for personal injuries, actual and punitive, sustained in a collision between a 1936 Ford Coach owned and driven by her father, James H. Chapman, and a truck-trailer owned and operated by the Transport Company. The accident occurred Sunday afternoon, August 28, 1949, about six o'clock, within the city limits of Greenville, on Camp Road, a paved highway fifteen feet in width. At the time of the accident, the Ford Coach was occupied by plaintiff, who was three years of age, and two younger children; their father, James H. Chapman, and his aunt. They were returning to their home in Greenville from a visit to Mr. Chapman, the grandfather of the children, traveling West. The weather was clear, the road was dry, and the usual Sunday afternoon traffic was on the highway.

When the Ford Coach was within about 250 yards of an intersection made by Druid Street and Camp Road, a Chevrolet car driven by Colonel Avent, entered Camp Road from a side street, ahead of the Chapman car, and likewise proceeded Westward, toward Druit Street. Behind the Chapman car a large fourteen-wheel transport van of the defendant followed at a distance of about thirty-five feet. It was loaded to capacity, and the weight of the load and the truck and trailer amounted to about 45,000 pounds. The driver of this truck testified that he maintained a distance of about sixty feet behind the Chapman car, and that they both were moving at a speed of thirty to thirty-five miles per hour.

As Colonel Avent in the leading car approached Druid Street, he held out his hand to signal his intention of stopping and making a left-hand turn. At this time, another car, driven from the opposite direction by Mr. M. J. Blackwell, was approaching and was within 100 yards of Druid Street. Mr. Chapman, behind the Avent car, observed his signal,

applied his brakes several times, which turned on the red stop signal lights at the back of his car, and slowly rolled up behind the Avent car. Guyton, the driver of the truck to the rear of the Chapman car, although sitting high in his seat in the cab, stated that he did not observe either the signal given by Colonel Avent or the red stop lights glowing from the rear of Chapman car. He did see both cars slowing up for Druid Street, and about to stop.

Being unable to stop his truck within the distance from the Chapman car, Guyton swerved his truck to the left, and got out in the left traffic lane, where he saw the Blackwell car approaching, some 50 or 75 yards on the other side of Druid Street. In order to avoid a head-on collision with the Blackwell car, Guyton turned his truck sharply to the right. Colonel Avent, looking back and observing the fast speed of the oncoming truck, and realizing that a collision was imminent, put his car in gear and started forward. The Chapman car had not quite come to a stop at this time. The truck crashed into the left rear of the Chapman car, its right front wheel mounting almost to the rear view window of the car, pushed it about 100 feet, and finally off the right side of the road into a ditch where the truck came to rest practically on top of the Chapman car. The front fender of the truck crushed in the entire left side of the Chapman car, and in its forward motion caused the Chapman car to bump into the rear of the Avent car before all motion ceased.

The three Chapman children, occupying the back seat of the Chapman car, suffered personal injuries, but fortunately none of them serious. All brought suit. The cases of James H. Chapman, Jr., and Linda Gayle Chapman, by their guardian *ad litem,* against the defendant, together with this case by Ada Jane Chapman, were tried together in the lower court. In each case the jury returned a verdict for $100.00, actual damages, and $500.00, punitive damages. By stipulation of counsel, only the case of Ada Jane Chapman has been appealed, but the decision of the court in this case will

be binding in each of the other cases. The same questions arise.

Plaintiff alleges that the collision and the resulting injuries were caused by the negligent, reckless and unlawful operation of the defendant's truck. Defendant by answer set up a general denial and unavoidable accident. At the close of plaintiff's testimony, the defendant moved for a directed verdict on the issue of punitive damages, and after the rendition of the verdict, moved on the same ground for a judgment *non obstante veredicto*.

Error is assigned because of the refusal of the trial court to grant these motions; and there are other issues presented by the appeal.

We first discuss whether there is any evidence in the case warranting a verdict for punitive damages.

Guyton, the driver of the truck, testified by deposition that he did not see any signal by Colonel Avent indicating his intention to stop; neither did he see the red signal lights on the rear of the Chapman car, which was immediately in front of him, indicating a similar purpose. It is evident that this testimony is wholly negative. The uncontradicted evidence of the plaintiff is that Colonel Avent did signal approximately fifty yards before reaching Druid Street, the intersection where he intended to turn left. There is ample, positive evidence that Chapman's brakes were in good condition; that his rear stop lights were properly connected with the brakes, and were displayed automatically upon application of the brakes. It may reasonably be inferred that the truck driver, when he failed to see these signals, was not keeping a proper look-out.

Camp Road, on which the Avent car, the Ford car driven by Chapman, and the truck, were traveling, in the sequence stated, was straight at the point where the accident occurred, for a distance of about 250 yards. There was a slight incline, a five per cent. grade, as Druid Street was approached, but

this grade leveled off about 50 yards before Druid Street was reached.

Mr. Blackwell, who testified for the plaintiff, stated that at the time of the accident he was approaching Druid Street from the opposite direction, proceeding East, and that he saw Colonel Avent slow down and signal his intention to turn to his left. Blackwell was traveling about 35 miles an hour, and when about 75 yards from Druid Street, he saw the defendant truck swerve to its left from behind the Chapman car, and completely occupy the left traffic lane, which was the side of the road which Blackwell was traveling on, and where he had a right to be. In order to avoid a head-on collision with the truck, he made a sudden violent turn to his right, at the Druid Street intersection, and it was at that moment that the truck driver, in order to avoid colliding with the approaching Blackwell car, swerved the truck to the right of the road, applied his brakes, striking the Chapman car in the rear, pushing it 100 feet, and crushing it into the ditch on the right of the road. According to Blackwell, the truck was traveling at a speed of about 45 miles per hour. And the testimony shows, according to the skid marks made by the truck tires on the road, that the driver Guyton, applied his brakes when he swerved to his right, crashing in the Chapman car on his right. These skid marks extended for a distance of 100 feet—that is, from the point of impact until the Chapman car was pushed into the ditch.

Guyton had been employed by the defendant for eighteen months as a truck driver. He was thoroughly familiar with this stretch of road and the crossing at Druid Street; he had driven trucks thereover off and on for seven years.

Chapman testified that he did not look through his rear view window, and had no knowledge that the truck was behind him until it loomed over his car immediately before it struck him There is no evidence that the truck driver ever gave any signal of his presence. He must also have known, or

should have known, that he would meet the usual Sunday afternoon traffic within the city limits of Greenville.

There are certain statutory provisions that are applicable here, on which instructions were given by the trial judge to the jury. It is provided in Section 60, sub-division (a), of the Highway Act, Acts 1949, Page 486: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Sub-section (b) of the same section reads as follows: "Where no special hazard exists that requires lower speed for compliance with (a) of this section the speed of any vehicle not in excess of the limits specified in this section or established as hereinafter authorized shall be lawful, but any speed in excess of the limits specified in this section or established as hereinafter authorized shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful".

In the foregoing sub-section, it is provided that the speed limit shall not exceed 35 miles per hour in any residential district.

Section 76, sub-section (a), provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

We then have Section 71: "No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering

with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within 100 feet of any vehicle approaching from the opposite direction."

From a careful consideration of the evidence in the present case, and the applicable law, we do not think that it can be said as a matter of law that the defendant in the operation of this heavily-loaded fourteen-wheel truck, was not grossly negligent. In our opinion, a jury question was presented as to whether or not the defendant failed to exercise slight care, and was guilty of wilfulness and wantonness which amounted to a gross disregard for the safety of others on the highway.

It follows that the court committed no error in overruling the motion for a directed verdict on the issue of punitive damages. Not only is it reasonably inferable that the truck driver was guilty of common law negligence of a highly reckless nature in driving this enormous truck-trailer at a speed of 45 miles per hour within 35 feet of the Chapman car ahead of it, but the inference is inescapable, too, that he created the emergency by violating the traffic statutes above referred to. The jury could have properly inferred that the truck driver was not keeping a proper look-out; and under the circumstances, on this Sunday afternoon, was traveling at a high and reckless rate of speed, giving no signal of his approach, and without ability to stop or control the movement of the truck within the distance at which he was following behind the Chapman car.

The violation of an applicable statute is negligence *per se,* and whether or not such breach contributed as a proximate cause to plaintiff's injury is ordinarily a question for the jury. *Eickhoff v. Beard-Laney, Inc.,* 199 S. C. 500, 20 S. E. (2d) 153, 141 A. L. R. 1010; *Lawrence v. Southern Ry.-Carolina Division,* 169 S. C. 1, 167 S. E. 839; *Dickson v. Inter-Carolina Motor Bus Co.,* 161 S. C.

297, 159 S. E. 625. However, there is one exception or modification to this general statement of the law. In Section 66 of the 1949 Acts, at Page 489, it is provided: "The provisions of this Act declaring *prima facie* speed limitations shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence on the part of the defendant as the proximate cause of the accident."

We conclude on this issue that there was sufficient evidence to impress the jury that the defendant's truck was being operated at a highly unsafe rate of speed; that the truck driver did not have proper control of his truck under the circumstances; and that he was not keeping a proper lookout—all of which the jury could reasonably infer amounted to wilfullness, wantonness, and reckless disregard for the rights of others.

Defendant contends that the failure of Mr. Chapman, before bringing his Ford coach to a stop, to look in rear vision mirror for traffic approaching from the rear, indicates negligence on his part. And error is assigned to the trial judge in his refusal to give the following charge to the jury: "While the negligence, if any, of the driver of the Chapman car cannot bar a recovery by the plaintiff of actual damages providing the defendant is negligent, nevertheless such negligence, if any, can be considered by you as to whether or not there was any recklessness or wilfullness on the part of the defendant."

No authorities are cited to sustain this contention, and in our opinion the court was entirely correct in refusing to give the requested instruction. Neither the negligence nor the contributory negligence of Mr. Chapman in the operation of his Ford coach, if any such negligence existed, could be imputed to the plaintiff under the circumstances in this case. And the charge, if given, would strongly have tended to confuse the jury in its decision. If the defendant was wilful and reckless in the operation of its truck, such conduct could not be offset or excused if the driver of the car in which this child was

a passenger was also negligent at the time. *Funderburk v. Powell,* 181 S. C. 412, 187 S. E. 742.

The final question presented has to do with the introduction in evidence of a deposition taken in Atlanta by the defendant of the testimony of the driver of the truck-trailer, Guyton.

After counsel for the plaintiff had announced that the plaintiff rested in the introduction of evidence, the defendant moved for a directed verdict on the issue of punitive damages. This motion, as heretofore stated, was refused. When defendant offered no testimony following plaintiff's announcement, the court over defendant's objection allowed plaintiff to reopen her case and put in evidence the deposition of the defendant's driver. This action of the court is assigned as error.

It is a well nigh universally recognied principle, and a common practice, for the trial court to allow a case to be reopened and additional evidence introduced in order to prevent a nonsuit or directed verdict, where counsel for plaintiff has omitted evidence by accident, inadvertance, or even because of mistake or misapprehension as to the necessity for offering a particular witness or particular evidence. A matter of this kind is left to the sound discretion of the trial judge; and a refusal to re-open a case may be an abuse of discretion where the party has acted in good faith, and where no prejudice would result to the other party. 53 Am. Jur., Sec. 124, Pages 110-111.

In our opinion, the action of the court in reopening the case for the introduction of this deposition did not constitute manifest error. The record fully shows inadvertance on the part of plaintiff's counsel, which resulted in no prejudice to the defendant. Immediately after the deposition was read to the jury, counsel for defendant, who had previously announced that the defendant would offer no testimony moved the court to be allowed to re-open the case for the defendant. Permission was promptly granted by the court

and the defendant thereupon took the testimony of a witness. We think that the action of the trial judge was in the interest of justice, in permitting the plaintiff to re-open her case in order to introduce the deposition of Guyton, the driver of the truck. See *Daniel v. Tower Trucking Co.*, 205 S. C. 333, 32 S. E. (2d) 5.

The case of *Seay v. Southern Ry. Co.*, 208 S. C. 171, 37 S. E. (2d) 535, cited by defendant, contains a different factual situation. In that case it was not shown, as here, that counsel for appellants were taken by surprise in their failure to introduce certain testimony before closing their case. In the present case we think the inadvertence of plaintiff's counsel is clearly shown, and that the defendant's failure to introduce the deposition took them entirely by surprise. Under all the circumstances, we think the court committed no error of law.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., and A. L. GASTON, Acting Associate Justice, concur.