19608

ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., of whom State Farm Mutual Automobile Insurance Company is, Defendant-Appellant, and National Grange Mutual Insurance Company et al., are, Respondents.

(195 S. E. (2d) 711)

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,* and *Wyche, Burgess, Freeman & Parham,* of Greenville, *for Appellants,*

*Messrs. Rainey, Fant, & McKay*, and *Abrams, Bowen & Townes*, of Greenville, *for the Respondents,*

April 5, 1973.

LITTLEJOHN, Justice:

Mitchell K. Robertson, Jr., was killed in a two-car collision about 10:30 p.m. on September 11, 1971, while driving a Pontiac automobile owned by his wife, Linda Horton Robertson. This action was brought for a declaratory judgment to determine the liability of insurance companies which are parties to this proceeding. The liability hinges on the answer to the one question which the judge submitted to the jury, as follows:

"State whether or not Mitchell K. Robertson, Jr., was operating the 1965 Pontiac with the consent, expressed or implied, of its owner Linda Horton Robertson, . . . ."

The jury answered the question in the affirmative. The plaintiff, Allstate Insurance Company, and the defendant,

State Farm Mutual Automobile Insurance Company, were adversely affected by the jury decision and both have appealed. They phrase five exceptions and suggest three questions in their brief, but we think there is only one basic issue for determination by this Court. It may be fairly stated as follows:

Is the evidence, considered as a whole, susceptible of the inference that Mitchell K. Robertson, Jr. was driving the Pontiac of Linda Horton Robertson with her consent, expressed or implied, when it collided with another vehicle about 10:30 p.m., September 11, 1971?

We review the evidence, not to weigh it (which is the province of the jury), but to determine if there is any to be weighed (which is the province of the court). In overruling the motions for a directed verdict and for judgment notwithstanding the verdict (which is the error alleged), the trial judge was required to view the evidence in the light most favorable to the respondents. We do the same.

Linda and Mitchell Robertson, Jr., were married in 1964. He was twenty-four years of age and she was sixteen. To this marriage one child, a son, was born approximately two years after the marriage. About five years later, they were separated but not divorced. Mitchell went to live with his parents about six miles north of Greer, and Linda went to live with her mother and subsequently obtained her own apartment. Custody of their son was agreed upon between them without the necessity of a written agreement or court order. From time to time, Mitchell would pick up their son at her apartment and the relationship between the estranged couple remained friendly, if not cordial.

Several days before the collision, Mitchell phoned Linda and learned that her Pontiac was not operating properly. He agreed to repair it for her without charge. His father, being a county employee, was able to procure the parts for them at wholesale cost, which she agreed to pay. Mitchell agreed to pick up her car on Saturday, September 11. On that morning, he drove his personal automobile from his parents' home

to Linda's apartment. He was not working that day but Linda was. He arrived about 7 o'clock in the morning and left his car for Linda to use throughout the day. She told him that she was planning to drive to Asheville that afternoon and would need the Pontiac back around 4 or 4:30 o'clock.

The evidence is silent as to Mitchell's activities during the morning and early afternoon, but it reflects that he washed the Pontiac about 3 o'clock in the afternoon at the home of his parents. About 4 o'clock in the afternoon, he took the Pontiac to a Gulf station on Wade Hampton Boulevard in Greenville and worked on it until about 5:30. At approximately 5:30, Mitchell and a Mr. Sewell road tested the car and apparently found it working properly. While he was repairing the car at the station, he either made or attempted to make several telephone calls. It is not established whether the calls were an attempt to reach Linda. Around 5:30, he left the station and returned about 7:30 or 8 o'clock that evening. He remained around the station until closing time, about 10 o'clock.

Mitchell stopped at a fish camp located on the road to his parents' home and purchased a fish plate to take out. He was continuing along the road from the fish camp to his parents' home when the collision occurred, about 10:30 p.m. This would be approximately 30 minutes after he left the service station.

Linda returned to her apartment from work about 4 o'clock in the afternoon. She attempted to call Mitchell, but was unable to reach him. She placed a note on the door of his car, together with Ten ($10.00) Dollars to pay for the parts, and asked him to leave her car. She and Barbara Pridmore then drove in the Pridmore car to Asheville, and returned to Greenville about 8:30 in the evening. They then went to Easley to spend the night.

It must be conceded that expressed permission to use the Pontiac was granted by Linda to Mitchell for the purpose of repairing the vehicle. The gravamen of the

appellants' contention is that this Court should hold as a matter of law that the permissive use expired about 4:30 in the afternoon because Mitchell did not return the car to Linda's apartment. We are of the opinion that the trial judge correctly held that a jury issue was created by the whole of the evidence. We do not think that the only reasonable inference to be drawn from the evidence is that Mitchell's permissive use of the Pontiac was revoked because the same was not returned at the time Linda indicated she would need it. We rather think that the evidence is susceptible of the inference that it was agreeable, at least impliedly, that each used the car of the other until the exchange was again made.

Implied permission to use an automobile may be established from the direct evidence, all pertinent circumstances and proper inferences to be drawn therefrom. *Southern Farm Ins. Co. v. Hartford A. & I. Co.,* 255 S. C. 427, 179 S. E. (2d) 454 (1971). The general relationship of the parties has been considered to be of paramount purpose on the issue of the implied use of an automobile, for the purpose of determining insurance coverage. *St. Paul Fire & Marine Ins. Co. v. American Ins. Co.,* 251 S. C. 56, 159 S. E. (2d) 921 (1968). Implied consent involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or a lack of objection under circumstances signifying assent. *Crenshaw v. Harleysville Mut. Cas. Co.,* 246 S. C. 549, 144 S. E. (2d) 810 (1965).

In view of the mutual trust demonstrated by the relationship of the parties, we cannot say that reasonable men could not disagree as to whether Mitchell was operating the Pontiac with consent at the time of the collision; this being true, the issue was one of fact for the jury and the trial judge was correct in so holding. The lower court is

Affirmed.

Moss, C. J., and Lewis, Bussey and Brailsford, J.J., concur.