0518

VACATION TIME OF HILTON HEAD ISLAND, INC., Respondent, v.
LIGHTHOUSE REALTY, INC., Appellant.

(332 S. E. (2d) 781)

Court of Appeals

*Kermit S. King,* of *King & Cobb,* Columbia, *for appellant.*

*William M. Bowen* and *Drew A. Laughlin* both of *Bowen, Smoot & Laughlin,* Hilton Head Island, and *John S. Taylor, Jr.,* of *Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P. A.,* Columbia, *for respondent.*

Heard March 25, 1985.

Decided July 2, 1985.

GOOLSBY, Judge:

In this action for breach of fiduciary duties, Lighthouse Realty, Inc., appeals from a jury verdict in favor of the respondent Vacation Time of Hilton Head Island, Inc., in the amount of $50,000. The issues on appeal relate to the cross-examination of a witness as to his interest in certain prior litigation, the sufficiency of the evidence concerning breach of fiduciary duties, the trial judge's jury instructions concerning punitive damages and nondisclosure of material facts, a motion to strike punitive damages from the complaint, and the absence of the trial judge during jury deliberations. We affirm.

Vacation Time entered into a listing agreement with Lighthouse, a real estate agency, on July 3, 1980. Under the terms of the agreement, Lighthouse agreed to act as Vacation Time's broker for the sale of approximately five acres of land owned by Vacation Time on Hilton Head Island. Vacation Time agreed to pay Lighthouse a ten per cent sales commission if the property were sold.

On Thursday, July 31, 1980, Jeff Wilson of Lighthouse communicated two offers to Dennis Lowes, the President of

Vacation Time. One offer was submitted by Westwood Developers, Inc., and the other by John Reed. Both offers were for $335,000 and contained contingencies. Unknown to Lowes, Reed was an officer of Lighthouse.

Lowes rejected both offers because of the contingencies.

Both Westwood and Reed resubmitted new offers the following day. Westwood's offer was for $335,000 from which a real estate commission of $35,000 would be deleted. Reed's offer was for "$306,000 net" to Vacation Time, meaning Reed would be responsible for the sales commission Vacation Time had agreed to pay Lighthouse upon the sale of the property. Neither offer contained a contingency.

On Saturday, August 2, 1980, Westwood's President, Richard E. Greider, and its financial backer for the Vacation Time venture, Frank O'Donnell, discussed increasing Westwood's offer. They agreed that Greider, who was negotiating for Westwood, could increase the offer from $50,000 to $60,000 "if necessary" to acquire the property.

Wilson, who had been advised by Lowes he would make no decision regarding the two offers prior to Monday, August 4, 1980, telephoned Lowes on Saturday, August 2, 1980, and pressed him for a decision. Lowes told Wilson that if he had "to make a decision, naturally [he was] going to make the decision to favor the $6,000 higher price."

Greider called Wilson on Sunday. Although Greider submitted no new offer, Greider informed Wilson that Westwood would be willing to increase its offer if that was what it would take to buy the property. Wilson, however, indicated to Greider he did not think Vacation Time wanted more money.

Wilson telephoned Lowes "two, possibly three" times on Sunday to inquire if Lowes had made any decision. Lowes repeated his preference for the offer that would net him the greater amount and finally told Wilson he accepted Reed's offer. Lowes then signed the Reed contract.

At this time, Lowes still did not know Reed was an officer of Lighthouse. He also did not know Westwood was willing to increase its offer.

Shortly after Lowes accepted the Reed offer, Wilson called a sales agent for Lighthouse, Richard F. Turner, to tell him of Lowe's decision. Wilson also contacted Reed to tell him Lowes "had agreed to his deal."

Turner then telephoned Greider and said to him, "[W]e got beat, you know, we lost the deal." Greider immediately questioned Turner about the fairness of the transaction, referring to the fact that Lighthouse had failed to inform him Reed was an officer of Lighthouse and that Westwood was prepared to increase its offer.

Turner later telephoned Wilson to give him Westwood's reaction.

Wilson in turn called Lowes and advised him that Reed "agreed to the deal" but because Westwood was upset about its offer not being accepted, they needed to confer.

On Monday afternoon, August 4, 1980, Wilson and Lighthouse's attorney, James M. Herring, met with Lowes in Lowes's office. Lowes learned for the first time Reed was an officer of Lighthouse when Herring explained to Lowes that Greider "was upset" over the rejection of Westwood's offer and that Greider felt Reed's connection with Lighthouse was influencing either Lowes or Lighthouse.

Herring recommended to Wilson and Lowes that Westwood and Reed be requested to resubmit their bids in writing directly to Lowes and Lowes "then [could] decide which [was] the best proposition, if any, and sign the contract [he] wish[ed] to sign." Lowes left the meeting thinking both offerors would be contacted and asked to submit new bids.

The next day, however, Wilson informed Lowes that Reed's bid was a final bid and that Reed "was not going to get involved in any kind of a bidding situation." After seeking legal advice, Lowes delivered the signed contract to Wilson.

At no time did Wilson mention to Lowes that Westwood was prepared to make a higher offer for the property. Moreover, Lighthouse made no effort to contact Westwood after the Monday meeting to inform it of a new opportunity to bid on the property.

Vacation Time initiated this action against Lighthouse in January, 1981. Its complaint alleges, among other things, that Lighthouse, acting as its broker, assumed the duties of a fiduciary to act in good faith and to inform Vacation Time of all material facts concerning the sale of the subject property and that Lighthouse willfully breached its duties to further its own interests. Vacation Time's complaint also

alleges it sustained actual and punitive damages in the amount of $150,000.

In its answer, Lighthouse acknowledges its broker-principal relationship with Vacation Time but denies the breach of any duties arising therefrom.

This appeal followed the return of a jury verdict in favor of Vacation Time in the amount of $50,000 actual damages and the denial of Lighthouse's post-trial motions.

## I. Cross-examination

Lighthouse contends the trial judge erred in sustaining Vacation Time's objection to Lighthouse's cross-examination of O'Donnell regarding his involvement in litigation earlier brought by Westwood against Lighthouse. As we mentioned, O'Donnell provided Westwood with financial support for the Vacation Time venture.

On cross-examination, Lighthouse asked O'Donnell, "Would it be fair to say that ... you were also more than just a casual bystander in the litigation instituted by Westwood against Lighthouse?" Vacation Time objected to the question on the ground of relevancy and the trial judge sustained the objection.

Considerable latitude is generally allowed in the cross-examination of an adverse witness for possible bias. *Martin v. Dunlap*, 266 S. C. 230, 222 S. E. (2d) 8 (1976). *North Greenville College v. Sherman Construction Co., Inc.*, 270 S. C. 553, 243 S. E. (2d) 441 (1978). "Evidence of past or pending litigation between the witness and the party against whom the witness is testifying is thus commonly admissible to demonstrate bias." *Id.* at 556, 243 S. E. (2d) at 442. But to warrant the reversal of a limitation placed on the scope of cross-examination by the trial judge, a manifest abuse of discretion and prejudice must be demonstrated. *See Barrineau v. Charleston Consolidated Railway, Gas & Electric Co.*, 81 S. C. 20, 61 S. E. 1063 (1908); *cf. Hall v. Palmetto Enterprises II, Inc. of Clinton*, 282 S. C. 87, 317 S. E. (2d) 140 (Ct. App. 1984) (exclusion of evidence forms no basis for reversal absent a clear showing of an abuse of discretion, commission of legal error in its exercise, and prejudice to the appellant's rights).

We hold that the trial judge's refusal to allow cross-examination of O'Donnell concerning his participa-

tion in earlier litigation brought by Westwood against Lighthouse, if error, did not prejudice Lighthouse because the proof was not required to show his bias. O'Donnell's bias was obvious.

He testified he was "confused" and "upset" over Lighthouse's handling of the transaction; he told Lighthouse he "was going to go directly to the owner and make it clear to them" what had happened; he also told Lighthouse he "didn't think the whole thing was handled properly"; and he later offered to indemnify Vacation Time for the sales commission Lighthouse may have brought suit to obtain in the event Vacation Time sold the property to Westwood.

The limitation placed by the trial judge on the scope of O'Donnell's cross-examination, therefore, does not warrant a reversal.

## II. Sufficiency of Evidence

Lighthouse contends the trial court erred in refusing to grant its motion for involuntary nonsuit, directed verdict, and judgment notwithstanding the verdict. It claims the evidence raises no inference Lighthouse breached any fiduciary duty it owed Vacation Time. We disagree.

In ruling on motions for nonsuit [*Hanselmann v. Mc-Cardle*, 275 S. C. 46, 267 S. E. (2d) 531 (1980)], directed verdict [*Jones v. Broome*, 277 S. C. 295, 286 S. E. (2d) 664 (1982)], and judgment notwithstanding the verdict [*Allstate Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 260 S. C. 350, 195 S. E. (2d) 711 (1973)], a trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party resisting the motions and to deny the motions if either the evidence yields more than one inference or its inferences are in doubt. *Holmes v. Black River Electric Co-operative, Inc.*, 274 S. C. 252, 262 S. E. (2d) 875 (1980). We are required to affirm if there is any evidence to sustain the factual findings implicit in the jury's verdict. *Buzhardt v. Cromer*, 272 S. C. 159, 249 S. E. (2d) 898 (1978); *Bell v. Harrington Manufacturing Co.*, 265 S. C. 468, 219 S. E. (2d) 906 (1975).

A broker owes a duty to its principal to keep it fully and promptly informed of all material facts that come to the broker's knowledge with respect to the

transaction in which the broker is engaged, affect the principal's interest, and might influence the principal's action. *Lowrance v. Swaffield*, 123 S. C. 331, 116 S. E. 278 (1923); 12 C.J.S. *Brokers* § 57 at 171 (1980).

> "Thus, it is the duty of a broker who is employed to sell property at a specified price to inform his principal . . . , upon hearing that a more advantageous sale . . . can be made, the facts concerning which are unknown to the principal, to communicate the same to him before making the sale as expressly authorized. A neglect to do so renders him liable to his principal for whatever loss the latter may suffer as a consequence thereof. . . ."

12 Am. Jur. (2d) *Brokers* § 89 at 842 (1964); *see* Note, 18 S.C.L. Rev. 819, 824 (1966).

Here, the evidence and the reasonable inferences drawn from it sustain the finding that Lighthouse, as a broker, breached a fiduciary duty owed to Vacation Time, its principal, to make a full and timely disclosure of material facts concerning the transaction. This failure affected Vacation Time's interest, obviously, and may well have affected Vacation Time's decision to sell the property to Reed.

The record is quite clear that Lighthouse knew Westwood was willing to increase its offer to purchase the subject property and that Lighthouse never disclosed this information to Vacation Time prior to Vacation Time's rejection of Westwood's offer and its acceptance of Reed's offer. Once Lighthouse learned a higher price was obtainable it had a duty to speak. *See Rattray v. Scudder*, 28 Cal. (2d) 214, 169 P. (2d) 371, 164 A.L.R. 1356 (1946).

### III. Jury Instructions

Lighthouse next contends the trial judge erred "in refusing to instruct the jury on the law of punitive damages as requested." It also questions the trial judge's instructions concerning an agent's duty to disclose.

The "law on punitive damages" Lighthouse requested the trial judge to charge, however, nowhere appears in its exceptions. As we gather, Lighthouse refers in its exceptions to the discussion of cases relating to punitive

damages appearing in its trial brief. Lighthouse submitted no written requests as is required by Circuit Court Rule 11.

The exceptions that raise that issue concerning the failure of the trial judge "to instruct the jury on the law of punitive damages as requested" do not merit our review. They do not limit themselves to "one proposition of law or fact" and they merely refer to purported requests to charge. S. C. SUP. CT. R. 4§ 6; *see State v. Cater*, 241 S. C. 262, 127 S. E. (2d) 882 (1962); *Hook v. Rothstein*, 281 S. C. 541, 316 S. E. (2d) 690 (Ct. App. 1984), *cert. denied*, 283 S. C. 64, 320 S. E. (2d) 35 (1984); *see also* S.C.CIR.CT.R. 11.

Lighthouse as the defendant was not entitled to a charge on punitive damages since punitive damages were not an issue in the case. *See Baker v. Weaver*, 279 S. C. 479, 309 S. E. (2d) 770 (Ct. App. 1983). Lighthouse alleged no counterclaim against Vacation Time in which it sought punitive damages. Moreover, the trial judge without objection from Lighthouse effectively struck punitive damages from the complaint when the trial judge instructed the jury it could only consider actual and compensatory damages after telling counsel earlier in the jury's absence, "I am not going to charge punitive damages. I will strike that."

We need not discuss the exceptions relating to the trial judge's modification of Vacation Time's request to charge concerning the duty of an agent to make disclosure to its principal of all facts known to the agent that might present a conflict of interest. The instruction, as modified by the trial judge, was given twice. After it was given the second time upon the request of the jury, the trial judge specifically asked counsel for both parties whether either had any "[e]xceptions or additions" to the charge. Lighthouse's attorney responded, "None from the defendant."

As we recently held, " '[w]here, after exception is taken to a charge, the court recharges the jury on the same subject, and no further exception is taken, any error in the latter charge is cured.' " *Sherer v. James*, Opinion No. 0437, Slip Op. at 3 (Ct. App. filed April 15, 1985), quoting 88 C.J.S. *Trial* § 425 at 1151 (1955).

## IV. Motion to Strike

Lighthouse further argues the trial judge erred in "refusing to remove from the Complaint certain language as to punitive damages." This argument lacks merit.

First, nothing in the record indicates the trial judge did not strike references in the complaint to punitive damages as Lighthouse claims. We cannot consider on appeal any fact not appearing in the transcript of record. *See S. C. State Highway Department v. Meredith*, 241 S. C. 306, 128 S. E. (2d) 179 (1962); *In re Estate Neubert, Burkhim v. Pinkhussohn*, 58 S. C. 469, 36 S. E. 908 (1900).

Furthermore, Lighthouse never argued below, either after the jury was instructed, after the verdict was rendered, or in support of its motion for a new trial, that the trial judge did not strike the offending language from the complaint. We will not consider an issue raised for the first time on appeal. *See Smith v. Smith*, 264 S. C. 624, 216 S. E. (2d) 541 (1975); *Cudd v. John Hancock Mutual Life Ins. Co.*, 279 S. C. 623, 310 S. E. (2d) 830 (Ct. App. 1983).

In addition, as we have observed the record shows the trial judge effectively struck punitive damages from the complaint when he advised the attorneys, "I am not going to charge punitive damages" and "I will strike that" and thereafter instructed the jury the case involved only actual or compensatory damages.

In connection with its argument regarding its motion to strike, Lighthouse also complains about the wording of the verdict returned by the jury. The verdict read, "We the jury find in favor of the plaintiff Fifty Thousand ($50,000) Dollars."

When the jury rendered its verdict, Lighthouse voiced no objection concerning the wording of the verdict. If Lighthouse considered the verdict confusing, it should have complained about the form of the verdict at the time it was rendered. *Howard v. Kirton*, 144 S. C. 89, 142 S. E. 39 (1928). Lighthouse did not do so either then or when it made its motion for a new trial. Lighthouse cannot be heard to complain about the form of the verdict for the first time on appeal. *See Smith v. Smith, supra; Cudd v. John Hancock Mutual Life Ins. Co., supra.*

## V. Absence of Trial Judge

Lighthouse's last contention relates to the trial judge's failure to remain in the courthouse for the duration of the trial.

During jury deliberations, the trial judge absented himself from the courthouse. In his absence, the jury foreman requested further instructions from the court concerning whether attorney fees were included in court costs. Both counsel for Vacation Time and counsel for Lighthouse agreed to allow the Clerk of Court to instruct the jury that neither court costs nor attorney fees could be considered in the verdict. The jury returned shortly thereafter with a verdict in favor of Vacation Time.

The question here is not entirely a novel one. In *State v. McIver*, 238 S. C. 401, 120 S. E. (2d) 393 (1961), the trial judge absented himself during the main portion of the solicitor's argument. Defense counsel argued on appeal that the trial judge's absence prevented counsel from making timely objections to the alleged improper conduct of the solicitor. The Supreme Court, while expressing its disapproval of the practice of a trial judge absenting himself from the courtroom during any part of the trial, held that the defendant's objection made for the first time on his motion for new trial came too late.

Here, the objection is made for the first time on appeal. As in *McIver*, the objection comes too late.

For the foregoing reasons, the judgment appealed from is

Affirmed.

CURETON, J., concurs, and GARDNER, J., concurs separately in Part II.

GARDNER, Judge (concurring):

I concur in all parts of the majority's opinion except Part II. As to Part II, I concur only in the result. I recognize, however, the law relied upon by the majority is the law of this case. The trial judge, relying upon a statement found in 18 S.C.L. Rev. 819 at 824 (1966), instructed the jury without objection from Lighthouse that a broker has a "duty to inform the principal if he knows of more advantageous

terms that could be obtained." *But see* S. C. Real Estate Commission Regulation 105-19A.