0677

Dorothy YOUNG, Respondent v. MEETING STREET PIGGLY WIGGLY, Appellant.

(343 S. E. (2d) 636)

Court of Appeals

*Stephen E. Darling*, of *Sinkler, Gibbs & Simons*, Charleston, *for appellant.*

*Francis X. McCann,* Charleston, *for respondent.*

Heard Jan. 29, 1986.

Decided April 14, 1986.

GOOLSBY, Judge:

The respondent Dorothy Young brought this slip and fall case against the appellant Meeting Street Piggly Wiggly. The jury awarded her $11,000 in actual damages. The dispositive question is whether the trial court properly denied Piggly Wiggly's motions for involuntary nonsuit, directed verdict, and judgment notwithstanding the verdict. We reverse.

We are aware that, in determining whether the trial court committed error in denying Piggly Wiggly's motions for involuntary nonsuit, directed verdict, and judgment notwithstanding the verdict, we must view the evidence and all inferences reasonably deducible therefrom in the light most favorable to Young, the nonmoving party. *Vacation Time of Hilton Head v. Lighthouse Realty,* 286 S. C. 261, 332 S. E. (2d) 781 (Ct. App. 1985). We are also aware that we are required to affirm if there is any evidence to sustain the factual findings implicit in the jury's verdict. *Id.* Here, however, the evidence yields only one reasonable inference and that inference does not favor Young.

Young slipped on some water and fell "by the entrance" to Piggly Wiggly's Meeting Street store in Charleston. It had been raining heavily all day long.

Because of the tracking in of rain onto its floor by customers and others, Piggly Wiggly's employees had been mopping the floor about every five or ten minutes.

In addition to mopping the floor, the employees of the store had brought two mop buckets "to the front." They had placed one bucket at the store entrance near a check-out and had put the other in a corner. Each bucket stood two feet tall and was painted a bright yellow. The words "WET FLOOR" written on each bucket's side in dark, bold letters warned customers and others of the floor's condition.

Piggly Wiggly used two mats to absorb the water tracked in on its floor by customers and others. One mat was situated outside its electronically-operated entrance door. The

second mat, described as a "sponge mat," lay just inside the entrance in a "T" configuration with the electronic door's grooved, rubber floor.

Young, who is overweight and blind in her left eye, entered the store after walking across the parking lot in the rain. She wore no rain gear. She did have on, however, a pair of worn-out leather shoes.

Young fell after taking a few steps inside the store. Although she knew "it was wet" when she went to the Piggly Wiggly, Young did not look at the floor as she entered the store. Nothing, however, blocked her vision and she had a clear view of the floor and of the store.

No other falls occurred at the store prior to Young's fall, even though it had rained throughout the day. Piggly Wiggly received no customer complaints before this accident. The floor where Young fell had been mopped between two and ten minutes before her arrival.

The duty owed a customer by a merchant in South Carolina is well established. A merchant is not the insurer of his customer's safety; rather, a merchant owes his customer the duty to exercise ordinary care to keep his premises in a reasonably safe condition. *Milligan v. Winn-Dixie Raleigh, Inc.*, 273 S. C. 118, 254 S. E. (2d) 798 (1979); *Bagwell v. McLellan Stores Co.*, 216 S. C. 207, 57 S. E. (2d) 257 (1949).

In our view, Piggly Wiggly took reasonable steps to remove excess water from the entrance way to its store. Since it is impossible to keep commercial premises entirely free of tracked-in rain during bad weather, a merchant's liability may not be based solely on the presence of moisture. *See* Annot., 20 A. L. R. 4th 438, 448 (1983).

In *S. S. Kresge Co. v. Fader*, 116 Ohio St. 718, 158 N. E. 174 (1927), a case not unlike the one here, the plaintiff sued a store as a result of a fall occurring in the store's entrance. The floor was made slippery by water tracked in by customers coming in from the rain. The court observed as it reversed the trial court and entered judgment for the store:

Everybody knows that, when people are entering any building when it is raining, they will carry some moisture on their feet, which will render the floor near

the door on the inside damp to some extent, and every one knows that a damp floor is likely to be a little more slippery than a dry floor. . . .

. . . It is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas, for several very good reasons, all so obvious that it is wholly unnecessary to mention them here in detail.

. . .

Not every accident that occurs gives rise to a cause of action upon which the party injured may recover damages from some one. Thousands of accidents occur every day for which no one is liable in damages, and often no one is to blame, not even the ones who are injured. . . .

158 N. E. at 175-76.

Likewise, the Supreme Court of Iowa held that, considering bad weather conditions, a store had exercised reasonable care in keeping the entrance to its store safe when it mopped up tracked-in water every hour or two. *Weidenhaft v. Shoppers Fair of Des Moines, Inc.*, 165 N. W. (2d) 756 (Iowa 1969). In support of its holding, the court stated:

The record here shows only the wet, dirty floor normally encountered in Iowa under these weather conditions. We do not believe the possessor would as a reasonable prudent person anticipate the condition would present an unreasonable risk to a person using due care. Precautions taken here were sufficient to discharge his duty to exercise due care for plaintiff's safety.

. . . .

There is no proof in the record the condition which faced plaintiff here contained an unreasonable hazard which possessor should have anticipated she as an ordinary reasonable prudent person would fail to appreciate. The condition complained of here was a temporary one caused by weather conditions.

165 N. W. (2d) at 761.

Here, mats were added at the entrance, the floor at the front was mopped about every five or ten minutes, and at least one warning of wet floors was posted near where Young fell. These steps were reasonable, considering the weather conditions and given that an ordinary reasonable person would know that there would inevitably be moisture on the floor as a result of rain-soaked people coming into the store. *See Smith v. Winn-Dixie Stores of Louisiana, Inc.*, 389 So. (2d) 900 (La. App. 1980); *Key v. J. C. Penney Co.*, 165 Ga. App. 176, 299 S. E. (2d) 895 (1983); *Stafford v. Food World, Inc.*, 31 N. C. App. 213, 228 S. E. (2d) 756 (1976), *cert. denied*, 291 N. C. 324, 230 S. E. (2d) 677 (1976).

As the Georgia Court of Appeals said in a recent case whose facts mirror those involved in this case,

> The risk of harm imposed by some accumulation of water on the floor of business premises during rainy days is not unusual or unreasonable in itself, but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate.

*Colbert v. Piggly Wiggly Southern*, 175 Ga. App. 44, 332 S. E. (2d) 304, 306 (1985).

The trial court committed reversible error, therefore, in allowing Young to go to the jury on the question of negligence merely by showing that there was some water on the floor of Piggly Wiggly's store.

Finding no need to do so, we do not reach the other issues Piggly Wiggly raises on appeal.

Reversed.

SHAW, J., concurs.

CURETON, J., dissents in separate opinion.

CURETON, Judge (dissenting):

This dissent was originally submitted to the members of the court as a proposed majority opinion. The majority of the panel has taken a contrary view. I have made several modifications and deletions to the proposed majority opin-

ion which I now submit as my view of the proper determination of the issues.

We cannot reverse the verdict of a jury unless the only reasonable inference which can be drawn from the evidence is contrary to the factual findings implicit in the verdict. *Willis v. Floyd Brace Co.*, 279 S. C. 458, 309 S. E. (2d) 295 (Ct. App. 1983). On appeal from a jury verdict our review is limited to determining if there is any evidence which reasonably tends to support the verdict. *Elders v. Parker*, 286 S. C. 228, 332 S. E. (2d) 563 (Ct. App. 1985). In ruling on motions for summary judgment, involuntary nonsuit, directed verdict, judgment notwithstanding the verdict and new trial, the evidence and all reasonable inferences which can be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Davis v. Piedmont Engineers, Architects & Planners, P.A.*, 284 S. C. 20, 324 S. E. (2d) 325, 326 (Ct. App. 1984) (summary judgment); *Mylin v. Allen-White Pontiac, Inc.*, 281 S. C. 174, 178, 314 S. E. (2d) 354 (Ct. App. 1984) (nonsuit, directed verdict, judgment n.o.v. and new trial). I therefore, review the record in accordance with these principles giving Young the benefit of all inferences where the evidence is conflicting.

Young, a fifty-three year old obese, diabetic woman was a regular Piggly Wiggly customer. On a rainy Saturday in September 1982, she entered the busy supermarket and fell backward, hitting her head hard against the floor. She slipped just inside of the entrance door and in front of a yellow mop bucket with "wet floor" written on it. Young expressly denied that she had staged the fall. In language which demonstrated her lack of formal education and guilelessness, she testified that the floor was wet and that her clothes became wet from the fall. Because of the pain in her neck, head and back, she went straight from the supermarket to a hospital emergency room where she was examined, x-rayed and released. Thereafter, she received treatment for headache, backache and insomnia from a chiropractor, who testified that Young's low back pain was permanent and that she also suffered injury to her neck. It is undisputed that her total medical expenses were One Thousand One Hundred Fifty Dollars ($1,150.00).

Two employees of Piggly Wiggly testified at trial. The

young assistant manager, an eyewitness, testified that he believed that Young staged the fall even though she received a "hard lick." He testified that he and other employees had mopped the floor around the entrance every five to ten minutes that day but that the floor could still be "slick" after being mopped. He also testified that while one mat was laid outside the door and another just inside the door to absorb water, a mat had not been placed where Young fell: that is, along the path which customers customarily traveled between the entrance door and the shopping carts. Moreover, he also prepared an accident report in which he listed "wet floor" as the cause of Young's fall.

The front-end store manager, a twenty-year employee, also testified that on rainy days he had seen customers "skid" near the entrance and that at one time the store had extra mats which were used during rainy weather but on the day in question the store had only two mats.

In order for Young to prevail, she had to prove the elements of negligence: that is (1) a duty of care owed by the defendant; (2) a breach of the duty by a negligent act or omission; and (3) damages proximately resulting from the negligent act or omission. *See e.g. Brown v. South Carolina Insurance Co.*, 284 S. C. 47, 51, 324 S. E. (2d) 641, 644 (Ct. App. 1984). "It has long been the law in South Carolina that a merchant is not an insurer of the safety of his customers but owes them only the duty of exercising ordinary care to keep the premises in *reasonably safe condition.*" *Milligan v. Winn-Dixie Raleigh, Inc.*, 273 S. C. 118, 120, 254 S. E. (2d) 798, 799 (1979) (emphasis added).

After reviewing the evidence in this case I find there is some evidence upon which a jury could base a verdict that Piggly Wiggly failed to keep its premises reasonably safe. One store manager had in the past observed people "skid" on the floor on rainy days and knew that the store once supplied additional mats on rainy days. Another manager admitted that the floor could have been "slick" after being mopped. These facts would allow a jury to conclude that Piggly Wiggly failed to keep the premises reasonably safe. Additionally, a jury could infer from the fact that since Young's clothes were wet when she arose from the floor that sufficient water had accumulated to make the floor slippery.

*Cf.* 62 Am. Jur. (2d) *Premises Liability* Section 223 (1972) (the presence of spots of wax or oil on plaintiff's clothing after a fall are frequently held to be relevant factors of a dangerous floor condition).

Piggly Wiggly argues that the trial judge abused his discretion by allowing Young to introduce portions of a deposition after she had closed her case-in-chief and after it had made a motion for involuntary nonsuit. The trial judge was persuaded by Young's argument that the evidence which it sought to introduce had not been presented in her case-in-chief because counsel thought he had presented sufficient evidence in view of the prior favorable ruling on the summary judgment motion. On appeal Piggly Wiggly argues that "judicial efficiency would dictate that if an attorney failed to advance evidence as to the critical parts of his client's prima facie case, an involuntary nonsuit should be granted to deter parties from coming into court unprepared and thus, needlessly lengthening the time it takes to try a case."

I disagree. Reopening a case is a matter within the sound discretion of the trial judge who may allow a party to reopen in order to prevent a nonsuit where counsel has "omitted evidence by accident, inadvertance, or even because of mistake or *misapprehension as to the necessity for offering a particular witness or particular evidence." Chapman v. Associated Transport, Inc.*, 218 S. C. 554, 563, 63 S. E. (2d) 465, 469 (1951) (emphasis added). Piggly Wiggly has shown no prejudice from this ruling and the trial of this case was not unduly lengthened inasmuch as Piggly Wiggly proceeded with its case immediately after the introduction of the deposition testimony.

Piggly Wiggly argues that it should be granted a new trial because the trial judge failed to charge the jury on all controlling legal principles, particularly that there is no duty to warn the public of open and obvious conditions. I disagree. "It is not error to refuse a request to charge even if it contains a correct and applicable statement of the law if its substance is fairly covered by the court's general charge." *O'Neal v. Carolina Farm Supply*, 270 S. C. 490, 495, 309 S. E. (2d) 776, 779-80 (Ct. App. 1983). I believe that the instructions given fairly covered the applicable law, I also

note that the trial judge did, in fact, charge the jury that a storekeeper's duty to warn customers arose from the existence of "dangerous conditions."

Piggly Wiggly finally argues that the verdict of Eleven Thousand Dollars ($11,000.00) was excessive in view of the fact that Young's medical expenses totalled only One Thousand One Hundred Fifty Dollars ($1,150.00). Piggly Wiggly suggested that it is entitled to a new trial unless Young accepts a reduced verdict. I disagree. The verdict is not so grossly excessive that we must conclude that the jury yielded to passion or prejudice and disregarded either the facts or the trial judge's instructions. *See King v. Daniel International Corp.*, 278 S. C. 350, 355, 296 S. E. (2d) 335, 338 (1982). In view of Young's permanent injury, pain and suffering and medical bills I would hold verdict was not excessive.

Having found no error I would affirm the trial judge.