1334

Thomas W. LOWRIMORE, Respondent v. FAST FARE STORES, INC., Appellant.

(385 S. E. (2d) 218)

Court of Appeals

*D. W. Green, Jr.,* of *Green & Sasser,* Conway, *for appellant.*

*Kenneth W. Thornton, Jr.,* Georgetown, *for respondent.*

Heard Feb. 14, 1989.

Decided Sept. 25, 1989.

GARDNER, Judge:

This personal injury case arose as a result of Thomas W. Lowrimore's (Lowrimore) slipping and falling in a Fast Fare Store. From a jury award for Lowrimore, Fast Fare appeals. We affirm.

## FACTS

Lowrimore is a right leg, above-the-knee amputee who walks with crutches. On the day of the injury, Lowrimore arrived at the Fast Fare between 4:00 a.m. and 4:30 a.m.; he went there nearly every morning for coffee. He parked his car and remained seated smoking a cigarette for several minutes before entering the Fast Fare. Williams, a Fast Fare clerk, who knew Lowrimore, was mopping the floor. Lowrimore testified that when he entered the store

Williams warned him, "Watch out, buddy, don't fall," but that he was already falling when he heard the warning. Portions of Williams' deposition were published as part of Lowrimore's case. The following is of record.

THE COURT: ... I am going to let you publish it.

Q. Your entire answer when I said, "Why did you tell him to watch his step?" Your answer in your deposition in July "Because the floor was damp and I felt that his crutch he had it would slip when he came stepping in. I just felt that when he was sitting out there I felt like that. I felt like he would probably slip when he came in with crutches and that is the reason I said something to him." Wasn't that your answer in July?

A. That was my answer....

Williams' testimony, considered in a light most favorable to Lowrimore, is consonant with Lowrimore's testimony.

Lawrimore also testified that he had been in Fast Fare on prior occasions when the floor was being mopped and that he had no problems negotiating the floor on his crutches. He testified that on these occasions, his crutches would actually stick to the floor. Lowrimore further testified he had touched the floor with his hand from time to time when he had "picked up stuff off the floor," and it was not slippery. He testified, however, that on the date of the injury, the floor was slippery, and that as he tried to get up after falling, his hand slipped in something on the floor which felt to him like wax.

Williams testified that he was using a "cleaner" to take tar and chewing gum off the floor on the morning of the injury. Williams also testified on cross-examination that he at times used plain water to mop the floor. There were no warning signs of any kind.

Timely motions for a directed verdict and judgment *n.o.v.* were made on the grounds that (1) the plaintiff's injuries were the result of his sole negligence; (2) Lowrimore assumed the risk of injury as a matter of law; and (3) Lowrimore was contributorily negligent as a matter of law.

## ISSUES

The issues of merit are (1) whether there is any evidence that Lowrimore's injury is a result of negligence on the part of Fast Fare, (2) whether the trial judge erred in failing to find as a matter of law that Lowrimore assumed the risk of injury and (3) whether viewing all the evidence and inferences therefrom in a light most favorable to Lowrimore, the trial judge erred by failing to find Lowrimore was contributorily negligent as a matter of law.

## DISCUSSION

In ruling upon denial of motions for a directed verdict and judgment *n.o.v.* or a new trial on the issues of liability, contributory negligence and assumption of risk, we must consider the evidence in a light most favorable to Lowrimore. We are not at liberty to pass upon the veracity of the witnesses and to determine this case according to what we think is the weight of the evidence. *Graham v. Whitaker*, 282 S. C. 393, 321 S. E. (2d) 40 (1984). In an action at law, on appeal of a case tried by a jury, the jurisdiction of this court extends merely to the corrections of errors of law; a factual finding of the jury will not be disturbed unless a review of the record discloses no evidence which reasonably supports the jury's finding. *Id.*

### I.
### Liability in Tort to Invitees

Fast Fare relies primarily on the cases of *Howard v. K-Mart Discount Store*, 293 S. C. 134, 359 S. E. (2d) 81 (Ct. App. 1987) and *Young v. Meeting Street Piggly Wiggly*, 288 S. C. 508, 343 S. E. (2d) 636 (Ct. App. 1986) In *Howard* the court held, "Testimony that a floor was slick, without evidence that the slickness constituted an unsafe condition, is insufficient to present a jury question on a merchant's conduct in the care of his floors and its causal relationship to the plaintiff's fall." 293 S. C. at 137-138, 359 S. E. (2d) at 83. Stated differently, the rule of *Howard* is that proof that a floor was slick is insufficient to establish negligence; in order to establish negligence, there must be evidence or testimony that the floor was so slick as to constitute an unsafe condition.

In *Young* the danger was caused solely by rain water tracked in by customers. The court stated, "Since it is impossible to keep commercial premises entirely free of tracked-in rain during bad weather, a merchant's liability may not be based solely on the presence of moisture." 288 S. C. at 510, 343 S. E. (2d) at 637-638. The evidence showed store employees placed mats and at least one warning sign at the store entrance and mopped the floor about every five to ten minutes to remove accumulated water. The court held the evidence, viewed in the light most favorable to the plaintiff, was susceptible to only one inference, i.e., that the store had taken reasonable steps to remove the excess water from the store entrance way. The court found, in effect, that there was no breach of the store's duty to exercise ordinary care to keep the premises in a reasonably safe condition.

*Felder v. K-Mart Corp.*, 297 S. C. 446, 377 S. E. (2d) 332 (1989), is a case in contrast to *Young*. *Felder* arose, as did *Young*, from tracked in and blown in rain water; but the evidence of the steps taken by K-Mart to abate the danger created by the rain water was conflicting so that the Supreme Court, speaking through Madam Justice Toal, held that a jury issue was created, and the verdict for the plaintiff was affirmed.

Lowrimore was an invitee to a business establishment. We, in this case, review the duty owed to an invitee by a merchant in the light of the most recent Supreme Court pronouncement of this definition. In the case of *Graham v. Whitaker, supra,* 282 S. C. at 398, 321 S. E. (2d) at 43, our Supreme Court had this to say:

> A person owes an invitee the duty of exercising reasonable or ordinary care for his safety and is liable for any injury resulting from the breach of this duty. This degree of care must be commensurate with the particular circumstances involved, *including the age and capacity of the invitee.* This duty is an active or affirmative duty. *It includes refraining from any act which may make the invitee's use of the premises dangerous or result in injury to him.* It is unessential that the precise manner in which the injuries might have occurred, or where sustained, be foreseeable, or foreseen. It is sufficient that there is a reasonable generalized gamut of

greater than ordinary dangers of injury and that the sustaining of the injury was within this range. It is, therefore, a jury question whether the defendant had provided reasonably safe premises. *Hughes v. Children's Clinic,* 269 S. C. 389, 237 S. E. (2d) 753 (1977).[1] [Emphasis ours.]

Lowrimore, as we noted above, was an amputee; Fast Fare's employee, Williams, knew this. The degree of care required of Fast Fare in this situation was therefore commensurate with the circumstances presented. This is the clear holding of *Graham v. Whitaker, supra.* As a person Williams knew to be disabled physically, Lowrimore was entitled to greater care than those more physically fit than he. 57A Am. Jr. (2d) *Negligence* Section 202 at 250 (1989).

On the evidence presented, in the light of the foregoing authorities, the jury could have found that a foreign substance, a cleaner placed on the floor by Fast Fare's employee, made the floor slippery; that Fast Fare's employee knew the condition of the floor; that, though the floor was obviously wet, the employee knew the floor was particularly dangerous to Lowrimore and constituted a hidden condition and danger of which Williams had knowledge and of which Lowrimore had less or no knowledge; and that the employee failed to take adequate steps either to abate the danger or timely warn Lowrimore of the danger. *See Hull v. Winn-Dixie,* 9 N. C. App. 234, 175 S. E. (2d) 607 (1970) ("The plaintiff's status as an invitee ... placed upon the defendant the duty ... to give warning of hidden conditions and dangers of which it had knowledge ... and of which the plaintiff had less or no knowledge."). It was, therefore, a jury question whether Fast Fare had provided reasonably safe premises or whether a breach of its duty to do so was the proximate cause of Lowrimore's injury. And we so hold.

---

[1] This rule is consonant with the developing law in this field. See, 2 *Restatement (Second) of Torts,* Sections 341A and 343 (1965); W. P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts,* Section 61 (5th ed. 1984).

See, McKay, *Merchants Liability in South Carolina for Injuries on the Premises—An Anachronism,* 23 S. C. L. Rev. 709 (1971), for a thorough discussion of previous South Carolina cases.

## II.
### Assumption of Risk

We turn to the issue of whether the trial judge should have directed a verdict on the grounds of assumption of risk; relative to that doctrine, we quite from *Senn v. Sun Printing Co.*, 295 S. C. 169, 173, 367 S. E. (2d) 456, 458 (Ct. App. 1988):

> The doctrine of assumption of risk, also known as *volenti non fit injuria*, means legally that a plaintiff may not recover for an injury to which he assents, i.e., that a person may not recover for an injury received when he voluntarily exposes himself to a known and appreciated danger. The requirements for the defense of *volenti non fit injuria* are:
>
> (1) the plaintiff has knowledge of the facts constituting a dangerous condition, (2) he knows the condition is dangerous, (3) he appreciates the nature and extent of the danger, and (4) he voluntarily exposes himself to the danger. *See* West's S. C. Digest *Negligence* Key No. 105. Under the defense of assumption of risk, sometimes referred to as the doctrine of incurred risk or taking the risk or hazard, or running the risk, a plaintiff who voluntarily assumes the risk of injury arising from the negligent conduct of the defendant cannot recover for the injury. And in this state the doctrine of assumption of risk may apply to preclude recovery in negligence cases. *Griffin v. Griffin*, 282 S. C. 288, 318 S. E. (2d) 24 (Ct. App. 1984).
>
> The doctrine of assumption of risk involves an intelligent and deliberate choice between a course known to be dangerous and what is not dangerous. It involves the taking of a calculated risk. Assumption of risk is a matter of knowledge of a danger and the intelligent acquiescence in it. The doctrine is predicated on the factual situation of a defendant's acts alone creating the danger and causing the accident, with the plaintiff's act being that of voluntarily exposing himself to such an obvious danger with appreciation thereof which resulted in the injury. 65A C. J. S. *Negligence* Section 174 (1966).

Applying the above principle to this case, we hold that there is sufficient evidence of record to create a jury issue as to assumption of risk. Lowrimore testified that he had been in Fast Fare on prior occasions when the floor was being mopped and on those occasions he had no problems negotiating the floor on his crutches; he testified that on those occasions, his crutches would actually stick to the floor; he further testified that on the day when he fell, the floor was different and very slippery. Fast Fare's employee, Williams, testified that he had previously on occasions mopped the floor with plain water, but on the day in question he was mopping it with a cleaner to remove gum and tar from the floor. This evidence is enough to create an inference for the jury that on the day in question, Lowrimore believed that the floor was mopped as it had been before with plain water and that his crutches would stick to the floor and that he could therefore walk safely.

Thus, there is evidence of record from which the jury could have reasoned that Lowrimore did not voluntarily expose himself to an obvious danger which he appreciated. We therefore hold that there was a jury issue as to assumption of risk.

### III.
#### Contributory Negligence

Likewise, this evidence is reasonably susceptible to the inference that Lowrimore acted reasonably when he entered the Fast Fare store. The issue of contributory negligence was therefore one for the jury. And we so hold.

### CONCLUSION

For the reasons above stated, we conclude that the trial judge did not err in overruling Fast Fare's motions for directed verdict and judgment *n.o.v.* And we so hold. The appealed judgment is, therefore, affirmed.

Affirmed.

CURETON and GOOLSBY, JJ., concur.